656 F.2d 807
 211 U.S.App.D.C. 218
 WWHT, INC. and Wometco Home Theatre, Inc., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
National Basketball Association, et al., UA-Columbia
Cablevision, Inc., United Cable Television Corp., Motion
Picture Assoc. of America, Inc., Gill Industries and Western
Communications, Inc., Telease, Inc., National Cable
Television Assoc., Inc., Teleprompter Corp., Subscription
Television Association, Intervenors.
 No. 80-1613.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 23, 1981.
Decided June 18, 1981.
 
 N. Frank Wiggins, Washington, D. C., with whom Marcus Cohn and Ronald A. Siegel, Washington, D. C., were on the brief for WWHT, Inc., et al., petitioners in Nos. 80-1613, 80-1614, 80-1647 and 80-1648.
 Louis Schwartz and Lawrence M. Miller, Washington, D. C., were on the brief for Radio Broadcasting Co., petitioner in Nos. 80-1634 and 80-1635.
 Benito Gaguine and Irving Gastfreund, Washington, D. C., were on the brief for Blonder-Tongue Laboratories, Inc., in Nos. 80-1636 and 80-1637.
 Gregory M. Christopher, counsel, Federal Communications Commission, Washington, D. C., with whom Robert R. Bruce, Gen. Counsel, Daniel M. Armstrong, Ass. Gen. Counsel and Stanford M. Litvack, Asst. Atty. Gen., Federal Communications Commission, John J. Powers, III and Andrea Limmer, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents. Terence Mahony, counsel, Federal Communications Commission, Washington, D. C., also entered an appearance for respondent, Federal Communications Commission.
 Gardner F. Gillespie, Washington, D. C., with whom Jay E. Ricks, Paul Glist and Barry Simon, Washington, D. C., were on the brief for Teleprompter Corp., intervenor in Nos. 80-1613, 80-1614, 80-1634, 80-1635, 80-1636, 80-1637, 80-1647 and 80-1648.
 Robert L. Heald, David G. Rozzelle and Robert L. Pettit, Washington, D. C., were on the brief for Gill Industries and Western Communications, Inc., intervenor in Nos. 80-1613, 80-1614, 80-1636, 80-1637, 80-1647 and 80-1648.
 William Weiver and Terry G. Mahn, Washington, D. C., were on the brief for Subscription Television Association, intervenor in Nos. 80-1613 and 80-1614.
 Brenda L. Fox and James H. Ewalt, Washington, D. C., were on the brief for The National Cable Television Association, Inc., intervenor in Nos. 80-1613, 80-1614, 80-1634, 80-1635, 80-1636, 80-1637, 80-1647 and 80-1648.
 Frederick E. Attaway, Washington, D. C., was on the brief for Motion Picture Association of America, Inc., intervenor in Nos. 80-1613 and 80-1614.
 Seymour M. Chase, Washington, D. C., was on the brief for Telease, Inc., intervenor in Nos. 80-1613, 80-1614, 80-1634, 80-1635, 80-1636, 80-1637, 80-1647 and 80-1648.
 Philip R. Hochberg, Washington, D. C., was on the brief for National Basketball Association, et al., intervenor in Nos. 80-1613, 80-1614, 80-1634, 80-1635, 80-1636, 80-1637, 80-1647 and 80-1648.
 John P. Cole and Joseph R. Reifer, Washington, D. C., entered appearances for UA-Columbia Cablevision, Inc., et al., intervenor in Nos. 80-1613, 80-1614, 80-1634, 80-1635, 80-1636, 80-1637, 80-1647 and 80-1648.
 Before ROBINSON, Chief Judge, and MacKINNON and EDWARDS, Circuit Judges.
 Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 This case raises the questions of whether, and under what circumstances, a reviewing court may require an agency to institute rulemaking proceedings after the agency has denied a petition for rulemaking.
 
 
 2
 Petitioners in this case seek review of two orders of the Federal Communications Commission (FCC), Memorandum Opinion and Order-Signal Carriage Rules-STV, 77 F.C.C.2d 523 (1980), and Order-Editorial Amendment, 77 F.C.C.2d 533 (1980). The effect of these two orders was to exclude the scrambled signals of local subscription (pay) television stations ("STV") from the mandatory carriage requirements of local cable television ("CATV") operators.[1]
 
 
 3
 In the first order ("Signal Carriage Rules-STV" ), the Commission denied a petition for rulemaking, filed by Blonder-Tongue Laboratories, Inc. (BTL), requesting that the FCC rules be amended so as to require cable television stations located within the Grade B contours of television broadcast stations authorized to broadcast subscription programs to carry the subscription television signals of those stations. See "Petition for Rulemaking," reprinted in Joint Appendix ("J.A.") at 20. The Commission also denied a "Request for Declaratory Ruling," reprinted in J.A. at 102, filed by Suburban Broadcasting Corporation ("Suburban"), that the existing rules of the FCC already required cable carriage of subscription television signals.
 
 
 4
 In the second order ("Editorial Amendment" ), the Commission issued an interpretative rule "(s)o as to avoid further confusion on the question of the obligations of cable television systems and the rights of subscription television stations regarding the carriage of subscription broadcast program(s)." 77 F.C.C.2d at 533. In particular, the Commission acted to amend its rules to make it clear that
 
 
 5
 the cable television signal carriage rules ... were not intended to and do not require cable television system operators to carry subscription (scrambled or pay) television programs broadcast by subscription television stations.
 
 
 6
 Id.
 
 
 7
 For the reasons hereafter enumerated, we hold that, except where there is evidence of a "clear and convincing legislative intent to negate review," Natural Resources Defense Council v. S.E.C., 606 F.2d 1031, 1043 (D.C.Cir.1979), an agency's denial of a rulemaking petition is subject to judicial review. However, we believe that the decision to institute rulemaking is one that is largely committed to the discretion of the agency, and that the scope of review of such a determination must, of necessity, be very narrow.
 
 
 8
 With these standards in mind, we cannot find that judgment of the Commission in Signal Carriage Rules-STV was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; we therefore affirm the order of the Commission denying the petition for rulemaking. As for the order in Editorial Amendment, we find that the Commission reasonably concluded that existing regulations did not require cable carriage of STV transmissions, and that it properly adopted an "interpretative rule" to this effect.[2]
 
 I. BACKGROUND
 
 9
 In 1968, the FCC established a nationwide over-the-air subscription television broadcasting service, and adopted rules designed to ensure the integration of the new STV service into the total television broadcasting system. Fourth Report and Order-Subscription Television, 15 F.C.C.2d 466 (1968). At the same time when the Fourth Report was issued, the FCC released a Third Further Notice of Proposed Rulemaking, 15 F.C.C.2d 601 (1968), in which the Commission noted that:
 
 
 10
 In establishing over-the-air subscription TV service, we have concluded that it is a broadcasting service, and the rules adopted are designed to assure its effective integration into the total television broadcasting system. We believe that as a part of that system it is entitled to protection with regard to CATV operations, just as conventional television broadcasting is. The present CATV rules (47 C.F.R. §§ 74.1100-74.1109) contain carriage and nonduplication requirements concerning conventional TV stations. Not to require carriage of STV signals would, in our opinion, be inconsistent with sections 1 and 307(b) of the act and with our view that STV is broadcasting.
 
 
 11
 Id.[3] Consistent with these views, the Commission proposed amendments to the cable carriage rules that would have required cable television systems to carry the signals of local subscription television stations; the Commission also invited comments from interested persons. 15 F.C.C.2d at 603-04.
 
 
 12
 No further action was taken with respect to the 1968 rulemaking proceeding until September 21, 1978, when the Commission terminated the proceeding without adopting the proposed amendments. Order-Proceeding Terminated, 69 F.C.C.2d 1622 (1978). The 1978 Order read, in part, as follows:
 
 
 13
 The comments filed in this Docket are now stale and a number of changes in the nature of our regulations have been made since the proceeding was commenced so that the record does not provide an adequate basis for the adoption of rules. Of particular importance is the lack of a record concerning the technical details involved in cable television carriage of broadcast STV programming. Moreover, we now have in progress our inquiry in Docket 21284 (65 FCC2d 9 (1977)) in which we are gathering information concerning the overall economic relationship between cable television and broadcast television. Although that proceeding is concerned with the relationship between conventional stations and cable systems, it may also provide some additional insight into the policies that should be applied to cable STV carriage. We are aware that there are parties interested in an expedited resolution of this proceeding through the adoption of rules. However, the lack of adequate comment in the record presents a procedural barrier to that action. At this point we believe the most efficacious procedure for those desiring further action would be the filing of petitions for rule making setting forth the rule changes requested and the public interest justification therefore. Our decision terminating this proceeding is not intended to foreclose the possibility of a new proceeding being commenced if that appears warranted.
 
 69 F.C.C.2d 1622-23 (footnote omitted).[4]
 
 14
 No appeal was taken from the Commission's order to terminate the 1968 rulemaking proceeding. However, on September 22, 1978, BTL petitioned the Commission to institute rulemaking proceedings to amend its mandatory cable carriage rules to include the carriage of STV signals. In support of the petition, BTL relied on the comments made by the Commission in 1968 in its Third Further Notice of Proposed Rulemaking, supra.[5]
 
 
 15
 Comments in support of the BTL petition were filed by four existing or proposed STV licensees Suburban Broadcasting Corporation; American Subscription Television, Inc.; Radio Broadcasting Company; and Wometco Blonder-Tongue Broadcasting Corporation (Wometco Home Theatre, Inc.). Comments in favor of the petition were also submitted by the Motion Picture Association of America, Inc. and the National Basketball Association, jointly with the National Hockey League. See Signal Carriage Rules-STV, 77 F.C.C.2d at 524. These supporting comments made the general argument that no good reason existed to distinguish between conventional television signals and STV signals and, therefore, the factors that supported mandatory carriage of local conventional television signals should also support mandatory carriage of local scrambled STV signals. Id. at 524-25. The comments from Suburban urged that the Commission's cable carriage rules already required carriage of STV signals; Suburban argued, in particular, that the existing rules afforded carriage rights to "television broadcast stations," without distinguishing between conventional television signals and STV signals. Id. at 525.
 
 
 16
 Comments opposing the BTL petition were filed by various cable television associations. See Signal Carriage Requirements, 77 F.C.C.2d at 526. These comments made several general arguments, emphasizing the unresolved technical difficulties involved in cable transmission of STV signals, and the "subscription fee" factor that distinguishes STV from conventional broadcasting. Id. at 526-27.
 
 
 17
 After reviewing the comments, the Commission denied the request for rulemaking. The Commission concluded that:
 
 
 18
 The Blonder-Tongue Laboratories petition for rulemaking and the associated comments ... leave us in essentially the same position we were in when the earlier (1968) proceeding was terminated (in 1978).
 
 
 19
 77 F.C.C.2d at 527. The Commission added that:
 
 
 20
 The ... reasons advanced (in the petition and comments) ... do not persuade us that the rule suggested should be proposed by the Commission for adoption. In particular the suggested parallel with the conventional station carriage rules ignores the very significant economic and technical differences between the two types of services. At the outset, there is no evidence and barely even a suggestion in the comments that cable carriage is fundamental to the survival or economic success of STV stations .... It was this concern ... which provided the most fundamental bases for the mandatory carriage rules when they were first adopted for conventional television broadcasting stations.
 
 
 21
 Id. at 528.
 
 
 22
 Other reasons cited by the Commission to justify the denial of the rulemaking petition included: (1) the carriage rules for conventional television broadcasting were premised on the Commission's view that the carriage requirements "impose(d) no substantial burden on the ordinary CATV operator or his subscribers," while the same has not been established with respect to the carriage of the subscription programming of STV stations; (2) the transmission of "scrambled transmissions" would impose burdens on cable operators not associated with the carriage of conventional stations; (3) "STV service would be purchased only by a fraction of total subscribers although all subscribers would be required to bear the cost of carriage;" and (4) the requested rule "would involve a costly redundancy of transmission paths with the same signal going to the same subscriber locations both over-the-air and by cable." See 77 F.C.C.2d at 528-29. The Commission noted that, although rate and program competition might be "more acute" if cable operators were required to carry STV transmissions, it is "appropriate that STV operators and cable television operators be left free to bargain in their own best interests for cable carriage." Id. at 529.
 
 
 23
 The Commission also denied Suburban's request for a declaratory ruling on the scope of the existing mandatory cable carriage rules. As noted above, Suburban had argued that the Commission's rules already required carriage of all local television broadcasting, whether broadcast as STV or non-STV signals. Suburban argued further that the Commission's rules "neither require nor do they even permit" STV and non-STV television stations to be treated differently, and that the Commission is bound to enforce "the plain meaning of certain sections of their Rules as they are written on their face." J.A. at 102.
 
 
 24
 In denying Suburban's request, the Commission declared that it had "publicly, clearly, and consistently" over the preceding twelve years "not intended nor enforced its rules to require cable carriage of the scrambled programming of STV stations." 77 F.C.C.2d at 530. In conclusion, the Commission stated that
 
 
 25
 there is no argument that any party has been prejudiced or misled to its detriment by the language of the rules, the Commission's interpretation has been clearly and consistently set forth, and there is no suggestion that the Commission is attempting to avoid the requirements of the Administrative Procedure Act, or using an ambiguity to its own advan-
 
 
 26
 77 F.C.C.2d at 531 (footnote omitted).
 
 
 27
 On May 5, 1980, the Commission issued the Editorial Amendment, 77 F.C.C.2d 533 (1980), to make it clear that the mandatory cable carriage rules contained in 47 C.F.R. §§ 76.57-63 were not intended to and did not require cable operators to carry subscription programs broadcast by STV stations. The interpretative rule, at 47 C.F.R. § 76.64, provides that:
 
 
 28
 § 76.64 Carriage of Subscription Television Broadcast Programs
 
 
 29
 The provisions of Sections 76.57, 76.59, 76.61, and 76.63 shall not operate to require carriage of any subscription television broadcast program.
 
 
 30
 Petitioners now challenge the decisions and orders contained in Signal Carriage Rules-STV and Editorial Amendment, alleging that the conclusions reached by the Commission are neither factually supported by the record, nor legally supported by the language of the Commission rules. For the reasons hereafter mentioned, we reject petitioners' claims and affirm the orders of the Commission.
 
 
 31
 II. INFORMAL RULEMAKING UNDER THE ADMINISTRATIVE PROCEDURE ACT
 
 A. Petitions for Rulemaking
 
 32
 Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553 (1976), sets out the procedures to be followed by administrative agencies in informal rulemaking. The Act imposes minimum notice requirements,[6] in addition to requirements that "interested persons" be given an opportunity to submit comments, and that the agency incorporate in any rules adopted a "concise general statement of their basis and purpose."[7]
 
 
 33
 With respect to petitions for rulemaking, section 4(d) of the APA provides that:
 
 
 34
 Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.
 
 
 35
 5 U.S.C. § 553(e). In the legislative history accompanying 4(d), it was stated that this section "requires agencies to receive and consider requests" for rulemaking.[8]
 
 
 36
 Although the legislative history accompanying section 4(d) makes it plain that an agency must receive and respond to petitions for rulemaking, it is equally clear from the legislative history that Congress did not intend to compel an agency to undertake rulemaking merely because a petition has been filed. When petitions for rulemaking are filed, section 4(d) requires the agency to
 
 
 37
 fully and promptly consider them, take such action as may be required, and ... notify the petitioner in case the request is denied. The agency may either grant the petition, undertake public rule making proceedings ... or deny the petition.
 
 
 38
 S.Rep.No.752, 79th Cong., 1st Sess. (1945), reprinted in Legislative History, at 185, 201 (1946).[9] In its report on the APA, the Senate Judiciary Committee emphasized that
 
 
 39
 (t)he mere filing of a petition does not require an agency to grant it, or to hold a hearing, or engage in any other public rule making proceedings. The refusal of an agency to grant the petition or to hold rule making proceedings, therefore, would not per se be subject to judicial reversal. However, the facts or considerations brought to the attention of an agency by such a petition might be such as to require the agency to act to prevent the rule from continuing or becoming vulnerable upon judicial review ....
 
 Id. at 201-02.[10]
 
 40
 The Attorney General's Manual on the APA confirms these interpretations of the APA. See United States Dep't of Justice, Attorney General's Manual on the Administrative Procedure Act at 38-39 (1947).[11] The Manual parallels the language of the Senate Report, indicating that an agency is not required to grant a petition for rulemaking merely because it is filed, and that prompt notice should be given when a petition is denied. With respect to the particular procedures followed by each agency in receiving and disposing of petitions for rulemaking, the Manual refers to the rules promulgated by each agency pursuant to 5 U.S.C. § 553. Attorney General's Manual at 38.
 
 
 41
 Under existing rules of the FCC, any interested party may petition the Commission for "the issuance, amendment or repeal" of a rule or regulation. 47 C.F.R. § 1.401(a) (1979). When a petition is filed, the Commission is to determine whether the petition "discloses sufficient reasons in support of the action requested to justify the institution of a rulemaking proceeding." 47 C.F.R. § 1.407 (1979). In cases where the Commission determines that rulemaking is not warranted, the "petition for rule making will be denied and the petitioner will be notified of the Commission's action with the grounds therefor." Id.[12]
 
 
 42
 No serious questions have been raised in this case with respect to the procedures followed by the FCC in receiving and responding to the petition for rulemaking. Indeed, it is clear from the record of the agency proceedings that no procedural infirmity can be cited.
 
 
 43
 B. Judicial Review of Agency Action on Petitions for Rulemaking
 
 
 44
 Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1976), governs judicial review of agency actions. Under 5 U.S.C. § 702,[13] any person adversely affected by agency action is entitled to judicial review, except where the statute under which the action was taken precludes judicial review, or where the action is committed to agency discretion by law. 5 U.S.C. § 701(a). While there is no claim in this case that judicial review is barred by some statutory preclusion,[14] there is a question as to whether the Commission's denial of the petition for rulemaking was an "agency action committed to agency discretion by law." 5 U.S.C. § 701(a)(2).
 
 
 45
 The 1947 Attorney General's Manual interpreted section 4(d), 5 U.S.C. § 553(e), of the APA to preclude judicial review of the denial of a petition to promulgate a rule or amendment, or of an agency's refusal to institute rulemaking proceedings. Attorney General's Manual, at 39. See also "Appendix to Attorney General's Statement Regarding Revised Committee Print of October 5, 1945," Legislative History, at 408-14. While we agree that judicial intrusion into an agency's exercise of discretion in the discharge of its essentially legislative rulemaking functions should be severely circumscribed, we reject the suggestion that agency denials of requests for rulemaking are exempt from judicial review.
 
 
 46
 Except where there is evidence of a "clear and convincing legislative intent to negate review," Natural Resources Defense Council v. S.E.C., 606 F.2d 1031, 1043 (D.C.Cir.1979), agency denials of petitions for rulemaking may be made the subject of judicial review. We have no doubt that, except in the rarest of cases, the decision to institute rulemaking is one that is largely committed to agency discretion; however, this begs the question with respect to judicial review.
 
 
 47
 The proper construction of the exemption for actions "committed to agency discretion" has been suggested in a number of judicial opinions, none of which appears to subscribe to the view enunciated in the Attorney General's Manual. In Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court indicated that the exemption from judicial review contained in 5 U.S.C. § 701(a)(2) should be applied only "in those rare instances 'where (an agency's organic) statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep.No.752, 79th Cong., 1st Sess., 26 (1945)." Id. at 410, 91 S.Ct. at 821. See Natural Resources Defense Council, Inc. v. S.E.C., 606 F.2d 1031, 1043 (D.C.Cir.1979). See also Krueger v. Morton, 539 F.2d 235, 238 (D.C.Cir.1976).[15]
 
 
 48
 In Natural Resources Defense Council, this court stated that 5 U.S.C. § 701(a) "creates a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate." 606 F.2d at 1043. The court referred to language in Senate Committee Report No. 752, reprinted in Legislative History, at 185, 201, noting that "(t)he refusal of an agency to grant the petition or to hold rule making proceedings ... would not per se be subject to judicial reversal," and concluded that the language implied that judicial review would sometimes be available when agencies refuse to institute rulemaking proceedings. 606 F.2d at 1043, n.14. The NRDC court also noted that, notwithstanding the role played by the Justice Department in drafting the APA, the Attorney General's Manual was not entitled to particular deference, "to the extent that it is inconsistent with the Senate Report." Id.
 
 
 49
 Other panels of this court have had occasion in the past to construe 5 U.S.C. § 701(a)(2), in conjunction with 5 U.S.C. § 706(2)(A),[16] to confer jurisdiction on the court to review actions allegedly committed to agency discretion. The case law on this point indicates that the court may review and set aside agency action that "infringes upon some legal mandate and thus is 'arbitrary, capricious, (or an) abuse of discretion, or otherwise not in accordance with law.' (5 U.S.C. § 706(2)(A))." Krueger v. Morton, 539 F.2d 235, 238-39 (D.C.Cir.1976) (footnote omitted). See also Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 874 (D.C.Cir.1970) ("(w)hile review is not granted for action 'by law committed to agency discretion,' as noted in section 701(a)(2), review is expressly provided for when there is an abuse of that discretion .... 5 U.S.C. § 706(2)(A).")
 
 
 50
 In the context of the instant case, petitioners have alleged that the FCC abused its discretion when it denied the request for rulemaking. This contention presents an issue that is plainly cognizable under 5 U.S.C. § 706(2) (A) of the APA. Although we believe that the scope of review must of necessity be narrow, we nevertheless hold that this court has jurisdiction to review the issue posed by petitioners.
 
 
 51
 III. THE LAW IN THIS CIRCUIT ON THE SCOPE OF REVIEW
 
 
 52
 A. Scope of Review of Agency Decisions Not to Promulgate Rules
 
 
 53
 The most comprehensive statement by this court as to the availability and scope of review of an agency's decision to deny a petition for rulemaking can be found in the thoughtful opinion by Judge McGowan in Natural Resources Defense Council, Inc. v. S.E.C., 606 F.2d 1031 (D.C.Cir.1979). Appellants in NRDC challenged the Commission's failure to promulgate rules requiring regulated corporations to make comprehensive disclosures of their environmental and equal employment policies. The court began its analysis of the reviewability of the Commission's action by noting "the strong presumption of reviewability" created by 5 U.S.C. § 701(a) of the APA, which is rebuttable only by a clear showing that judicial review would be inappropriate. 606 F.2d at 1043. The court also reiterated the mandate of Citizens to Preserve Overton Park, supra, that the section 701(a)(2) exemption should be limited to those rare instances where " 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Id. at 1043. However, the court noted that this determination necessarily turns on "pragmatic considerations" as to whether the agency's determination is the proper subject of judicial review. Id.
 
 
 54
 In applying these pragmatic considerations to the claims before it, the court in NRDC separated out the aspects of appellees' claim that were essentially procedural from those addressed more to the policy determinations reflected in the Commission's action.[17] The substantive aspects of appellees' claim challenged the rationality of the SEC's ultimate decision not to adopt the environmental and equal employment rules proposed by appellees. In analyzing the reviewability of the decision to reject the proposed rules, the court noted that the Commission possessed "broad discretionary powers to promulgate (or not promulgate)" rules of disclosure, and that the NEPA did not go so far as to require agencies to promulgate specific rules. Id. at 1045. Nevertheless, even though the "pragmatic calculus" inclined against reviewability of the SEC's decision, the court concluded that, in light of the strong presumption of reviewability,
 
 
 55
 in a context like the present one, in which the agency has in fact held extensive rulemaking proceedings narrowly focused on the particular rules at issue, and has explained in detail its reasons for not adopting those rules, we believe that the questions posed will be amenable to at least a minimal level of judicial scrutiny.
 
 
 56
 Id. at 1047.
 
 
 57
 The court in NRDC also discussed the possibility of some minor interference with the agency's performance of its statutory mission. Specifically, the court referred to the diversion of scarce institutional resources to defend in court a decision not to adopt proposed rules that an agency had already determined, in its expert judgment, to be not even worth the effort already expended. Id. at 1045. However, this factor was considered less compelling in NRDC, where the SEC had evidenced its view that the proposed rules were sufficiently meritorious to warrant further investigation via the institution of rulemaking proceedings. In other words, the greater the agency's investment of resources in considering the issues raised by the petition, and the more complete the record compiled during the course of the agency's consideration, "the more likely it is that the ultimate decision not to take action will be a proper subject of judicial review." Id. at 1047, n.19. Where, as in this case, the agency simply declines to initiate any rulemaking procedures, the court in NRDC intimated that the scope of judicial review should be extremely limited, if permitted at all. Id. at 1045-46.
 
 
 58
 Finally, with respect to an agency decision not to promulgate a certain rule, the court stated:
 
 
 59
 An agency's discretionary decision not to regulate a given activity is inevitably based, in large measure, on factors not inherently susceptible to judicial resolution e. g., internal management considerations as to budget and personnel; evaluations of its own competence; weighing of competing policies within a broad statutory framework. Further, even if an agency considers a particular problem worthy of regulation, it may determine for reasons lying within its special expertise that the time for action has not yet arrived. The area may be one of such rapid technological development that regulations would be outdated by the time they could become effective, or the scientific state of the art may be such that sufficient data are not yet available on which to premise adequate regulations. The circumstances in the regulated industry may be evolving in a way that could vitiate the need for regulation, or the agency may still be developing the expertise necessary for effective regulation.
 
 
 60
 Id. at 1046 (citations omitted).
 
 
 61
 Obviously, the case for reviewability of the order before us is even less compelling than that in NRDC. The agency in NRDC suggested the possibility that the proposed rules there were of some merit when it granted the petition and instituted rulemaking proceedings. In the case before us, however, the Commission, after some preliminary consideration of the proposed rule, concluded that further deliberations would be unwarranted.
 
 
 62
 While it is clear that the applicable scope of review of discretionary agency decisions not to promulgate certain rules can be found under section 10(e)(2) (A) of the APA, 5 U.S.C. § 706(2)(A),[18] the parameters of the "arbitrary and capricious" standard of review will vary with the context of the case. NRDC, 606 F.2d at 1049-50. In general, the "arbitrary and capricious" standard calls for a review that is " 'searching and careful,' Citizens to Preserve Overton Park, supra, 401 U.S. 402, at 416, 91 S.Ct. 814, at 823-24, 28 L.Ed.2d 136, yet, in the last analysis, diffident and deferential." NRDC, 606 F.2d at 1049 (footnote omitted). The agency's decision that the public interest does not require the promulgation of specific rules for the time being must be sustained "if it violates no law, is blessed with an articulated justification that makes a 'rational connection between the facts found and the choice made,' and follows upon a 'hard look' by the agency at the relevant issues." Action for Children's Television v. FCC, 564 F.2d 458, 479 (D.C.Cir.1977) (footnote omitted). The agency's determination is essentially a legislative one, and the reviewing court should do no more than assure itself that the agency acted "in a manner calculated to negate the dangers of arbitrariness and irrationality ...." Id. at 472, n.24.
 
 
 63
 In determining the scope of review in this case, we follow the lead of NRDC. In particular, we adhere to Judge McGowan's suggestion that, where the proposed rule pertains to a matter of policy within the agency's expertise and discretion, the scope of review should "perforce be a narrow one, limited to ensuring that the Commission has adequately explained the facts and policy concerns it relied on and to satisfy ourselves that those facts have some basis in the record." 606 F.2d at 1053. We also recognize that where the agency decides not to proceed with rulemaking, the "record" for purposes of review need only include the petition for rulemaking, comments pro and con where deemed appropriate, and the agency's explanation of its decision to reject the petition. Obviously, the "record" in a case such as the one before us will not resemble the records compiled in cases like NRDC, and National Black Media Coalition v. FCC, 589 F.2d 578 (D.C.Cir.1978), where rulemaking procedures were actually initiated.[19]
 
 B. Judicially Imposed Rulemaking
 
 64
 Because of the broad discretionary powers possessed by administrative agencies to promulgate (or not promulgate) rules, and the narrow scope of review to which the exercise of that discretion is subjected, there are very few cases in which courts have forced agencies to institute rulemaking proceedings on a particular issue after it has declined to do so. As was recognized in Action for Children's Television, supra :
 
 
 65
 As a corollary of (the agency's) broad general discretion, the Commission has considerable latitude in responding to requests to institute proceedings or to promulgate rules, even though it possesses the authority to do so should it see fit. "Administrative rule making does not ordinarily comprehend any rights in private parties to compel an agency to institute such proceedings or promulgate rules." Rhode Island Television Corp. v. FCC, 116 U.S.App.D.C. 40, 44, 320 F.2d 762, 766 (1963).
 
 
 66
 564 F.2d at 479. See also Porter County Chapter v. United States Nuclear Regulatory Comm'n, 606 F.2d 1363, 1369 (D.C.Cir.1979).[20] It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking.
 
 
 67
 In Geller v. FCC, 610 F.2d 973 (D.C.Cir.1979), we ordered the Commission to make a fresh determination as to whether regulations promulgated pursuant to an agreement reached in 1972 continued to serve the public interest long after the predicate for the agreement had ceased to exist. The regulations in issue had been promulgated initially to reflect a "consensus agreement" reached by parties affected by the Commission's cable television policies in their efforts to facilitate the passage of new copyright legislation. After the new copyright legislation was passed in 1976, petitioner had requested the Commission to re-examine the regulations to determine their continuing validity. The Commission refused to conduct such a proceeding on the ground that petitioner had introduced no evidence to aid in its determination of whether the rules continued to serve the public interest. The court reversed the Commission's order, finding the Commission's exercise of discretion not to institute rulemaking proceedings to be "plainly misguided." 610 F.2d at 979. The court in Geller ruled that an agency "cannot sidestep a reexamination of particular regulations when abnormal circumstances make that course imperative." Id. (footnote omitted). The rule that emerges from Geller, then, is a limited one: that an agency may be forced by a reviewing court to institute rulemaking proceedings if a significant factual predicate of a prior decision on the subject (either to promulgate or not to promulgate specific rules) has been removed.
 
 
 68
 This court found equally compelling the circumstances in NAACP v. FPC, 520 F.2d 432 (D.C.Cir.1975), aff'd, 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976), and in National Organization for Reform of Marijuana Laws v. Ingersoll, 497 F.2d 654 (D.C.Cir.1974). In NAACP, this court vacated the Commission's order dismissing petitioner's request for rulemaking on the ground that the Commission was mistaken in concluding that it lacked jurisdiction to promulgate regulations concerning employment discrimination by its regulatees. Similarly, in National Organization for Reform of Marijuana Laws, we remanded an order of the Bureau of Narcotics and Dangerous Drugs that rejected outright a rulemaking petition on the ground that the Bureau was not authorized to institute proceedings for a rule that would be inconsistent with United States treaty obligations under the Single Convention on Narcotic Drugs, 1961, 18 U.S.T. 1407 (1967). 497 F.2d at 656. The opinion noted that "rejection" of a party's filing is a "peremptory" action, soundly used only in cases where there is a "procedural defect or failure to comply with a clear-cut requirement of law." Id. at 659. The court in NORML then stated that, if in fact the Bureau's assessment of the rule sought by petitioners was correct, the agency's determination should be reflected in a denial of the petition on the merits. Id.
 
 
 69
 It is significant that in neither NAACP nor NORML did the court compel the agency to actually institute rulemaking proceedings. Rather, each agency was required on remand to reconsider its denial of the petition, in light of the correct interpretation of the law as enunciated by the court.[21]
 
 IV. DISPOSITION OF THIS CASE
 
 70
 As we have already noted in part "II.A." of this opinion, no serious questions have been raised in this case with respect to the procedures followed by the FCC in receiving and responding to the petition for rulemaking. Our review of the record indicates that no procedural infirmity mars the actions of the agency below.
 
 
 71
 We are left then, with a challenge to the factual and policy determinations of the Commission. We note at the outset that the interest sought to be protected by petitioners is primarily economic; in particular, petitioners, STV broadcasters, seek the protections of the mandatory cable carriage rules which have been afforded conventional broadcasters. Such an interest, without more, does not present the unusual or compelling circumstances that are required in order to justify a judgment by this court overturning a decision of the Commission not to proceed with rulemaking.
 
 
 72
 For us to seriously indulge petitioners' claims in this case would be to ignore the institutional disruption that would be visited on the Commission by our second-guessing its "expert" determination not to pursue a particular program or policy at a given time. It would also require us to ignore the plain fact that the policy determinations made by the Commission in this case as to the relative merits of mandatory cable carriage of STV signals raise issues that are not well-suited for determination by this court. These considerations lead us to conclude that our review of the Commission's actions should be extremely narrow, consistent with the views heretofore expressed. The Commission's substantive determinations are essentially legislative in this case and are thus committed to the discretion of the agency.
 
 
 73
 Nevertheless, as we have already held, the Commission is required to give some explanation for its actions. Such an explanation enables a reviewing court to satisfy itself that the agency's action was neither arbitrary, nor capricious, nor an abuse of discretion, nor otherwise contrary to statutory, procedural or constitutional requirements.
 
 
 74
 Having considered the record in this case, we are satisfied that the orders of the Commission must be affirmed. The Commission adequately explained the facts and policy concerns it relied on, and there is nothing to indicate that the opinions of the Commission are unlawful, arbitrary, capricious or wholly irrational. Therefore, the judgment of the Commission not to proceed with rulemaking at this time must be left undisturbed.[22]
 
 
 75
 For all of the foregoing reasons, the orders of the Commission are hereby affirmed.
 
 
 76
 So ordered.
 
 
 
 [1]
 Both of the orders presently under review were adopted on April 24, 1980, although the first order was released May 16, 1980, 11 days after the Commission released the Editorial Amendment order on May 5, 1980. The Commission's rules governing cable carriage requirements for CATV operators are contained in 47 C.F.R. §§ 76.57-63 (1980)
 
 
 [2]
 Since the order in the Commission's Editorial Amendment represented an "interpretative rule," it was exempt, under 5 U.S.C. § 553(b), from the usual rulemaking notice and comment procedures of the Administrative Procedure Act. See Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Co., 589 F.2d 658 (D.C.Cir.1978)
 
 
 [3]
 Section 1 of the Communications Act, 47 U.S.C. § 151 (1976), provides:
 § 151. Purposes of Chapter; Creation of Federal Communications Commission
 For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.
 Section 307(b) of the Act, 47 U.S.C. § 307(b) (1976), provides:
 § 307. Licenses; allocation of facilities; terms, renewals
 (b) In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.
 
 
 [4]
 The Commission noted that Blonder-Tongue Broadcasting Corporation had filed a petition for expedited action in the proceeding terminated by the September 21, 1978 Order. 69 F.C.C.2d at 1623, n.1
 
 
 [5]
 BTL also argued that an amendment to the mandatory cable carriage rules was necessary because the Copyright Act of 1976 prohibited carriage of STV signals by a cable system without a Commission rule requiring such carriage. However, as the Commission noted in its decision denying the petition for rulemaking, 77 F.C.C.2d at 527, this argument was based on a misreading of the Act's provisions. The argument under the Copyright Act has not been raised by any of the parties to this appeal
 
 
 [6]
 5 U.S.C. § 553(b)
 
 
 [7]
 5 U.S.C. § 553(c)
 
 
 [8]
 "Senate Judiciary Committee Print, June 1945," reprinted in Administrative Procedure Act: Legislative History, 79th Cong. 1944-46, S.Doc.No. 248, 79th Cong., 2d Sess. 11, 21 (1946) (hereafter "Legislative History")
 
 
 [9]
 See also "Appendix to Attorney General's Statement Regarding Revised Committee Print of October 5, 1946," reprinted in Legislative History, at 408-09 ("Section 4(d) simply ... requires the reception and consideration of petitions, but does not compel an agency to undertake any rulemaking procedure merely because a petition is filed.")
 
 
 [10]
 It is also evident, from both the legislative history of the APA and the text of the Act itself, that an agency is required to give "prompt notice," along with a brief explanation, whenever petitions for rulemaking are denied. 5 U.S.C. § 555(e) provides:
 Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.
 
 
 [11]
 See Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 546, 98 S.Ct. 1197, 1213, 55 L.Ed.2d 460 (1978), noting that the contemporaneous interpretations contained in the 1947 Attorney General's Manual are entitled to some deference because of the role played by the Department of Justice in drafting the legislation. See also Natural Resources Defense Counsel, Inc. v. S.E.C., 606 F.2d 1031, 1043, n.14 (D.C.Cir.1979)
 
 
 [12]
 47 C.F.R. § 1.407 (1979) provides:
 § 1.407. Action on Petitions
 If the Commission determines that the petition discloses sufficient reasons in support of the action requested to justify the institution of a rulemaking proceeding, and notice and public procedure thereon are required or deemed desirable by the Commission, an appropriate notice of proposed rule making will be issued. In those cases where notice and public procedure thereon are not required, the Commission may issue a final order amending the rules. In all other cases the petition for rule making will be denied and the petitioner will be notified of the Commission's action with the grounds therefore.
 
 
 [13]
 5 U.S.C. § 702 grants a right of review to "(any) person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute...."
 
 
 [14]
 47 U.S.C. § 402(a), in conjunction with 28 U.S.C. § 2342(1), expressly provides for judicial review of all final orders of the Federal Communications Commission that a party seeks to have enjoined, set aside, or suspended
 
 
 [15]
 In no event would a finding of nonreviewability on the ground that an action is committed to agency discretion preclude judicial review when constitutional violations have been alleged. 5 U.S.C. § 706(2)(B) (1976). Citizens to Preserve Overton Park, 401 U.S. at 413-14, 91 S.Ct. at 822. See also Krueger v. Morton, 539 F.2d 235, 238 (D.C.Cir.1976); Grace Towers Tenants Ass'n v. Grace Housing Dev. Fund Co., 538 F.2d 491, 496 (2d Cir. 1976); Ness Investment Corp. v. United States Dep't of Agriculture, 512 F.2d 706, 714-15 (9th Cir. 1975); Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 874-75 (D.C.Cir.1970)
 
 
 [16]
 5 U.S.C. § 706(2)(A) (1976) reads as follows:
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall ...
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ....
 
 
 [17]
 The court in NRDC identified both procedural and substantive challenges. The court found, with "little difficulty," that the procedural aspects of appellees' claim those grounded in the Commission's alleged failure to comply with certain procedures mandated by the National Environmental Policy Act (NEPA) were a proper subject for judicial review. 606 F.2d at 1044
 
 
 [18]
 See note 16, supra
 
 
 [19]
 We noted in Action for Children's Television, supra, that in cases where the agency has decided against promulgation of a rule, the scope of review is very limited because the "record" will likely be a simple statement of reasons for nonadoption. 564 F.2d at 472, n.24. It is noteworthy that Action for Children's Television, like NRDC, involved a rulemaking procedure, and yet the court still recognized that the "record" need only contain a simple statement of reasons for nonadoption of the proposed rule
 
 
 [20]
 In Porter County, petitioners sought review of the NRC's dismissal of their request to institute adjudicatory proceedings to revoke a nuclear power plant construction permit due to alleged unresolved safety issues. We affirmed the Commission's order, noting the "wide discretion" possessed by agencies "to determine the means of administration of pertinent regulatory standards, the techniques of interpretation, application, filling in of details, and enforcement." 606 F.2d at 1369. Because of this discretion,
 (t)he agency is not bound to launch full-blown proceedings simply because a violation of the statute is claimed. It may properly undertake preliminary inquiries in order to determine whether the claim is substantial enough under the statute to warrant full proceedings. The appropriate agency official has substantial discretion to decline to initiate proceedings based on this review, at least where, as here, he gives reasons for denying or deferring a hearing.
 Id.
 
 
 [21]
 Other instances in which this court has required rulemaking proceedings are distinguishable by virtue of statutorily imposed rulemaking requirements. See e. g., Environmental Defense Fund v. HEW, 428 F.2d 1083 (D.C.Cir.1970). See also Environmental Defense Fund v. Ruckelshaus, 439 F.2d 584, 594-98 (D.C.Cir.1971), and Pressley v. FCC, 437 F.2d 716, 721 (D.C.Cir.1970)
 
 
 [22]
 We also reject petitioners' claim that the Commission has improperly discriminated against STV broadcasters in violation of existing FCC rules and regulations. The Commission has merely clarified its existing policies on the issue of cable carriage of STV signals. Since the existing policies are not otherwise unlawful, the continuation of these policies cannot be seen to raise any significant legal question