ENVIRONMENTAL DEFENSE FUND, et al., Plaintiffs,

v.

Lee M. THOMAS, Administrator, Environmental Protection Agency, et al., Defendants.

Chemical Manufacturers Association, Defendant-Intervenor.

Civ. A. No. 85–0973.

United States District Court, District of Columbia.

March 30, 1987.

As Amended April 14, 1987.

Robert V. Percival, Washington, D.C., for plaintiffs EDF.

Mark Van Putten, Ann Arbor, Mich., and David Burwell, Washington, D.C., for National Wildlife Federation.

Edward W. Warren, Timothy S. Hardy, Stuart A.C. Drake, Kirkland & Ellis, and David Zoll, Sanford E. Gaines, Chemical Manufacturers Ass'n, Washington, D.C., for defendant-intervenor.

Barry S. Neuman, Steven Rogers, Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Fred R. Dishroon, Special Litigation Counsel, U.S. Dept. of Justice, Alan Carpien, Office of General Counsel, U.S. EPA, Washington, D.C., for defendant EPA.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs Environmental Defense Fund (EDF) and National Wildlife Foundation (NWF) instituted this suit under section 21 of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2620, and the Administrative Procedure Act (APA), 5 U.S.C. § 701, seeking review of defendant Environmental Protection Agency's [1] (EPA's) denial of their petition for rulemaking under the TSCA. The parties, along with defendant-intervenor Chemical Manufacturers Association (CMA), have cross-moved for partial summary judgment on eight of the nine counts set out in plaintiffs' complaint, and defendant has, in addition, moved to dismiss the case in its entirety. This case and the pending motions raise several difficult questions of first impression. For the reasons set forth below, the court will deny defendant's motion to dismiss, but will enter partial summary judgment in favor of defendants and defendant-intervenor.

## I

Congress enacted the TSCA in 1976 in an effort to provide a comprehensive framework for regulating toxic chemicals. Although prior environmental legislation touched on certain aspects of toxic substance control, Congress found that federal laws were "fragmented and inadequate," and that this piecemeal approach left "conspicuous gaps ... in the protections provided by such laws." H.R.Rep. No. 1341, 94th Cong., 2d Sess. 6 (1976) (House Report). In particular, Congress sought a regulatory approach that would prevent damage to human health and the environment, rather than simply respond to such damage after it occurred. *Id.* Thus, section 6 of the TSCA grants EPA authority to apply a wide variety of controls on the manufacture, processing, distribution, use or disposal of chemical substances for which there is a "reasonable basis to conclude" that such activity "presents or will present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2605(a). These controls range from outright prohibitions on the production, processing or distribution of such chemicals to regulations governing the labeling of toxic substances. *Id.* Section 4 of the Act permits EPA to mandate testing of any chemicals or substances if it finds that those substances "may present an unreasonable risk of injury to health or the environment" and that "there are insufficient data and experience" upon which to predict their effects. *Id.* § 2603(a)(1)(A). Under section 8, EPA may also impose recordkeeping and reporting requirements on manufacturers and processors of such chemicals. *Id.* § 2607.

Congress also provided for citizen participation in the administration and enforcement of the Act. Section 21 authorizes citizens to petition EPA for the initiation of rulemaking proceedings under any of the aforementioned sections. *Id.* § 2620(a). The agency must either grant or deny the petition within 90 days of its filing. *Id.* § 2620(b)(3). Where a petition is granted, EPA must promptly commence proceedings under the appropriate section. *Id.* In cases where the agency denies the petition,

---

1. The complaint names as defendants several EPA officials, all acting in their official capacities, as well as the agency itself. For convenience sake, this opinion will refer to all EPA defendants as "EPA."

it must publish its reasons for the denial in the Federal Register. *Id.* Where a petition is denied, or where EPA fails to respond to a petition within the 90–day period, the petitioner may seek *de novo* review of the denial in federal district court. *Id.* § 2620(b)(4). Such review must be sought within 60 days from the date of the denial, or, in cases where EPA fails to respond within 90 days, within 60 days from the expiration of the 90–day period. *Id.* These rights to petition for rulemaking and to *de novo* review of a petition denial are "in addition to, and not in lieu of, other remedies provided by law." *Id.* § 2620(b)(5).

In the present case, plaintiffs filed a petition for rulemaking to "prevent and reduce environmental contamination by dioxins and dibenzofurans." Complaint, Exhibit A. The petition requested regulation of a generic class of dioxin and dibenzofuran isomers, identifying at least 28 such isomers which, based on structural similarities to dioxin and furan isomers of known and extremely high toxicity, warranted action as a "category" under FSCA.[2] Plaintiffs criticized EPA's present regulatory approach to these chemicals and petitioned the agency for rulemaking under section 6 to limit concentrations of the dioxins and furans in products, require labeling of all products contaminated by such chemicals, and control the manner and method of disposal of wastes contaminated by dioxins and furans. In addition, plaintiffs sought imposition of record-keeping and reporting requirements pursuant to section 8 in order to monitor the generation, exposure and health effects of the chemicals. Finally, the petition requested that, where the agency believed it lacked sufficient information to make the threshold findings necessary for issuance of rules under section 6, it would issue rules under section 4 to gather the needed information.

EPA responded to the petition on January 22, 1985, 50 Fed.Reg. 4426 (Jan. 30, 1985), denying all requests for rulemaking under section 6. The agency stated that it lacked critical information to decide whether all of the dioxins and furans presented an unreasonable risk such that contamination limits and labeling requirements were warranted, and concluded that regulation of the disposal of contaminated wastes was more appropriately accomplished under other federal laws. In view of its finding that it lacked sufficient information on the risks posed by the isomers of concern, the agency granted plaintiffs' request for record-keeping requirements under section 8, and initiated proceedings under section 4 in order to obtain data concerning exposure from the manufacture, use and disposal of contaminated chemicals. These section 4 proceedings resulted in the issuance of a proposed rule on December 19, 1985. 53 Fed.Reg. 51794 *et seq.*

Plaintiffs filed suit on March 25, 1985, seeking review of the agency's denial of their petition.

## II

EPA moves to dismiss this case in its entirety on the grounds that plaintiffs failed to initiate suit within the statutorily prescribed period for seeking judicial review and that, in any event, EPA has granted plaintiffs the alternative relief they sought in their petition, thus mooting this action. The court addresses each of these contentions in turn.

Defendant first challenges the court's jurisdiction to entertain this suit, alleging that plaintiffs failed to comply with the jurisdictional deadline for filing their complaint set out in section 21 of the TSCA. Section 21 provides that any action seeking review of a denial "shall be filed within 60 days after the Administrator's denial of the petition or, if the Administrator fails to grant or deny the petition within 90 days after filing the petition, within 60 days after the expiration of the 90–day period." 15 U.S.C. § 2620(b)(4)(B). Plaintiffs filed their petition on October 22, 1984. EPA responded on January 22, 1985, 92 days

---

**2.** Section 26(c) of the TSCA authorizes EPA to take action wth respect to a category of chemical substances, "the members of which are similar in molecular structure, in physical, chemical or biological properties, in use, or in mode of entrance into the human body or into the environment." 15 U.S.C. § 2625(c).

after the petition was filed. Plaintiffs then commenced suit on March 25, 1985, 62 days after EPA issued its response and 64 days after the expiration of the 90–day response period. Defendant argues that the filing requirements of section 21 are jurisdictional prerequisites to suit and that plaintiffs failed to satisfy those requirements. Under the terms of section 21, the expiration of the 90–day period set the 60–day filing period in motion on January 20, 1985, and plaintiffs were therefore obliged to institute this action no later than March 21, 1985. Their failure to do so deprives this court of subject mater jurisdiction over the action.

The court recognizes, of course, that "statutory time limits for review of agency action are jurisdictional in nature," and are therefore strictly construed. *Eagle-Picher Industries v. EPA*, 759 F.2d 905, 911 (D.C. Cir.1985) (footnote omitted). Plaintiffs argue, however, that Rule 6(a) of the Federal Rules of Civil Procedure governs the calculation of section 21's 90– and 60–day periods, and that under the rule their suit was timely filed. Rule 6(a) provides in pertinent part that:

> [i]n computing any period of time prescribed or allowed ... by any applicable statute ... [t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days.

Fed.Rule Civ.P. 6(a). Here, the last day of EPA's 90–day response period fell on January 20, 1985, a Sunday. The following day was Inauguration Day, a legal holiday in the District of Columbia. EPA filed its partial denial the next day, January 22, which, under Rule 6(a), would be the last possible day for issuing the response. Calculating plaintiffs' 60–day filing period from January 22, the sixtieth day fell on a Saturday, March 23, 1985. The following day, a Sunday, would also be excluded under Rule 6(a). Thus, the last day of the filing period under the Federal Rule would have been Monday, March 25, the day plaintiffs instituted this action.

Rule 6(a), of course, has been applied to other jurisdictional time limits. *See Union National Bank v. Lamb*, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190 (1949); *Dayton Power & Light Co. v. Federal Power Comm'n*, 251 F.2d 875 (D.C.Cir.1957). As the Supreme Court noted in *Lamb*, the rule "provides the method for computation of time prescribed or allowed not only by the [federal] rules or by order of court, but by 'any applicable statute.'" 337 U.S. at 41, 69 S.Ct. at 912. As long as Congress expresses no contrary intent in the jurisdictional statute itself, application of Rule 6(a) simply supplements the statute without in any way detracting from its jurisdictional nature. *Id.* EPA argues, in response, that Rule 6(a) has never been applied to extend a statutory deadline for the completion of an *administrative* act, and that section 21 of the TSCA embodies a congressional intent not to permit such extensions.

■ This court cannot agree. To begin with, defendant's reliance on cases such as *Whipp v. Weinberger*, 505 F.2d 800 (6th Cir.1974), in which the court refused to apply Rule 6(e) to save an otherwise untimely judicial filing, is misplaced. *Whipp* involved a statute that required initiation of judicial review within sixty days after the mailing of notice of an adverse decision by the relevant agency. Rule 6(e) provides that where proceedings are to be commenced within a certain period of time after service of notice, the prescribed period is to be extended by three days when service is accomplished by mail. Fed.R.Civ.P. 6(e). The *Whipp* court refused to apply Rule 6(e) because the statute governing judicial review not only anticipated service of notice by mail, it specified that the actual mailing of such notice would trigger the start of the filing period. Thus, the application of Rule 6(e) would contravene the express provisions of the review statute itself. Here, by contrast, there is no conflict between Rule 6(a) and section 21 of the TSCA, which is completely silent as to the method of computing the 90–day response and 60–day filing periods.

Furthermore, a review of the relevant legislative history lends no support to the

miserly construction of section 21 that defendant urges. Indeed, section 21 and the legislative history behind it demonstrate Congress' solicitousness towards citizen petitioners. As the Conference Report accompanying the bill explained:

> the conferees' main interest is to make certain that any [section 21] such petitioner receive timely consideration of [their] such petition. By requiring the Administrator to act on any such petition within 90 days, the conferees will facilitate such a petitioner's right to seek judicial review should the Administrator deny the petition. Otherwise, the Administrator could avoid any judicial review simply by failing to take any action.

H.R.Conf.Rep. 94–1679, 94th Cong., 2d Sess. 98, U.S.Code Cong. & Admin.News 1976, pp. 4491, 4583. That Congress sought to force rapid action by EPA through section 21's 90–day deadline is indisputable. It does not follow from this, however, that Congress intended to preclude application of Rule 6(a) to those time limits. Such a rule would punish the intended beneficiaries of the statute's action-forcing mechanism.

Finally, courts have construed statutory time limits for review of agency action as jurisdictional in order to "impart[ ] finality into the administrative process, thereby conserving administrative resources." *Eagle-Picher Indus. v. EPA*, 759 F.2d at 911. A complete failure to respond to a section 21 petition within 90 days, however, is in no way comparable to an administrative adjudication or an administrative rulemaking issued after notice and comment. The factors weighing in favor of finality in these latter contexts are largely absent here, where the agency may not expend any resources at all. Ironically, in the present case, the wooden rule EPA urges would result in a complete waste of administrative resources as it could render EPA's response to the petition a complete nullity.

It is unnecessary, however, to call into question the jurisdictional nature of section 21. Application of Rule 6(a) to the section's time limits is consistent both with the jurisdictional dictates of the provision and the congressional intent underlying it. Congress designed section 21 to promote citizen participation in the rulemaking process and to ensure that judicial review of the agency's response would not be frustrated through agency inertia or indifference. Nothing in the statute or its legislative history, however, suggests that the availability of such review should turn on the vagaries of the calendar. Because there is no inconsistency between Rule 6(a) of the Federal Rules and section 21's time limitations, and because under the former plaintiffs have satisfied the latter, the court will deny defendant's motion to dismiss for failure to commence this action in a timely manner.

■ Defendant also moves for outright dismissal on the ground that it granted plaintiffs the alternative relief they sought in their petition, and thus this case is moot. This contention merits little discussion. Plaintiffs' 103–page petition reviewed available scientific data concerning dioxin and furan isomers and requested a comprehensive system of regulations to govern nearly every aspect of their production, distribution and disposal. Plaintiffs requested that EPA promulgate under section 6 a series of rules which plaintiffs believe are presently warranted based on available data. The petition also stated that in the event the Administrator decided that "any or all of the actions requested by the Petition cannot be taken due to the lack of data ... EDF and NWF petition the Administrator to issue a testing rule under TSCA § 4(c)(1)(A) for those specified isomers of concern (or combinations of isomers) for which insufficient data or experience are determined to exist." Petition at 12.

As plaintiffs note, their petition was not simply a generalized plea to "do something." Nor was their section 4 request framed as an alternative to their lengthy request for rulemaking pursuant to section 6. Certainly EPA did not construe the petition in such a manner in its response, which states quite clearly that it is a denial of all the petition's request for rulemaking under section 6, 50 Fed.Reg. 4426, 4431, 4434–35, 4436, 4448, and a "partial grant"

of the petition itself. More importantly, section 21 grants plaintiffs the right to "commence a civil action ... to compel the Administrator to *initiate a rulemaking proceeding* as requested in the petition." 15 U.S.C. § 2620(b)(4)(A) (emphasis supplied). Plaintiffs' suggestion in their petition that the agency issue testing rules in the event that it found presently available data insufficient is neither inconsistent with their belief that regulations are warranted on the basis of current data, nor with their right to continue to seek such regulations in court while the agency collects additional data. Section 21 grants plaintiffs the right to demonstrate to this court that, notwithstanding the EPA's contrary conclusion, regulations are necessary to prevent an unreasonable risk of injury to the environment or human health. That right is not altered simply because plaintiffs, out of an abundance of caution, also asked the agency to issue testing rules for those dioxin and furan isomers for which it believed there was insufficient data. Accordingly, defendant's motion to dismiss will be denied.

### III

■ The parties have also moved for partial summary judgment on eight of the nine counts set out in plaintiffs' complaint. Seven of the eight counts turn on the applicability of the Administrative Procedure Act to section 21 and EPA's denial of a citizen petition; Count IX alleges that the agency failed to perform certain non-discretionary duties under the TSCA. The court finds that defendant and defendant-intervenor are entitled to summary judgment on all eight counts.

Plaintiffs contend that in addition to their right to *de novo* review of the agency's denial of their petition, they are entitled to have the agency's purported reasons for that denial judged by the strictures of the APA. According to plaintiffs, while section 21 itself sets out no standards guiding EPA's decision to grant or deny a petition, the substantive criteria enumerated in each of the TSCA's sections under which the agency is asked to initiate rulemaking proceedings govern such decisions. Plain-

tiffs argue that section 6 permits EPA to deny a petition for rulemaking if it makes one of three findings. First, the agency could have found under section 6(a) that there is no reasonable basis to conclude that the dioxin or furans present or will present an unreasonable risk to health or the environment. Second, if EPA found that there was a reasonable basis for believing the isomers do present an unreasonable risk, it could nevertheless deny a petition of section 6 rulemaking if it found under section 9(b) that actions taken under its other statutory authorities would sufficiently reduce the risk *and* that it would *not* be in the public interest to protect against that risk under the TSCA. Finally, the agency could have found under section 4(a) that the isomers may present an unreasonable risk and there is insufficient information upon which to predict their effects.

Plaintiffs insist that EPA failed to make any of these findings and instead denied the rulemaking petition on impermissible grounds. They note that the agency did not make a threshold finding that there was no reasonable basis to conclude that the isomers pose an unreasonable risk to health or the environment. Indeed, EPA has conceded that the magnitude of the risks presented by these chemicals is considerable. *See* 50 Fed.Reg. 51794, 51799 (Dec. 19, 1985). Rather, according to plaintiffs, the agency concluded (1) that the availability of other statutes for controlling the disposal and emissions of materials contaminated by such chemicals made it unnecessary to consider whether the isomers pose an unreasonable risk warranting regulations under section 6; (2) that it could not initiate section 6 rulemaking proceedings without data about the toxicity of each individual dioxin and furan isomer and without determining the costs of risk reduction in all circumstances; and (3) that these isomers cannot be regulated under the TSCA when they are present as contaminants in pesticides. Because these reasons do not comport with the requirements set out in the TSCA, or are erroneous as a matter of law, plaintiffs argue that they are entitled to summary judg-

ment on their claims that the agency's denial was arbitrary, capricious and not in accordance with law.

While maintaining that its reasons for denying the petition were valid and lawful, EPA takes the position that the APA has no bearing on a section 21 denial. Section 21 imposes no obligation on the agency to make findings of fact or to otherwise demonstrate compliance with any substantive criteria governing petition denials. The statute grants EPA absolute discretion to deny petitions for any reason; indeed, the statute expressly contemplates that the agency may take no action on a petition at all. The sole limitation on the agency's exercise of this discretion is the petitioner's extraordinary right to seek *de novo* review of a denial or a failure to respond. Congress authorized disappointed petitioners to bring suit in federal district court to demonstrate by a preponderance of the evidence that there is a reasonable basis to conclude that the issuance of the requested rule is necessary to protect health or the environment from an unreasonable risk of injury. This right, EPA argues, rather than the APA, operates as a check on agency action.

Plaintiffs strenuously disagree with this construction of the statute. To begin with, they make much of the fact that section 21(b)(5) expressly states that the right to *de novo* review "shall be in addition to, and not in lieu of, other remedies provided by law." 15 U.S.C. § 2620(b)(5). They argue, therefore, that the right to *de novo* review is not a substitute for their rights under the APA, but simply supplements those rights. There is no necessary inconsistency, however, between section 21's saving clause and EPA's construction of the statute. Petitioners would still have a right to APA review if and when the agency took some type of final action—if, for example, it issued a rule pursuant to section 6 or a testing rule under section 4. These sections set forth the substantive standards against which the agency's action may be judged, and the requirement that the agency conduct rulemaking proceedings before issuing any such rules ensures an administrative record upon which review may be

had. Thus, under defendant's interpretation of section 21, petitioners are still entitled to two bites at the apple—*de novo* review if the agency denies their petition, and APA review if the agency grants the petition but issues a rule with which petitioners are dissatisfied.

There is, however, an inherent illogic to plaintiffs' contention that a petition denial is simultaneously subject to both *de novo* and APA review. Section 21 expressly provides that where the agency denies or fails to respond to a petition, the burden rests with the petitioner to demonstrate that there is a reasonable basis to conclude that the requested rule is necessary to protect against an unreasonable risk of injury to health or the environment. Yet plaintiffs argue that the agency's petition denial should be set aside under the APA as arbitrary or capricious because EPA failed to make a threshold determination that there is *no* reasonable basis to conclude that the dioxin and furan isomers present or will present an unreasonable risk of injury to health or the environment. Thus, while section 21 places an affirmative burden of proof on petitioners to show that there is an unreasonable risk of injury, plaintiffs seek to shift that burden to the agency by requiring it to prove essentially the inverse—*i.e.* that there is no unreasonable risk. Whatever merit plaintiffs' allocation of burdens may have in the abstract, Congress chose to place the evidentiary burden on citizen petitioners, and this court may not alter that scheme under the guise of conducting APA review.

That petition denials are not subject to APA review is further underscored by section 21's complete lack of substantive standards governing the agency's consideration of such petitions. APA review is unavailable if a statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Section 21 simply states that EPA "may hold a public hearing or may conduct such investigation or proceeding as [it] deems appropriate in order

to determine whether or not [a] petition should be granted." 15 U.S.C. § 2620(b)(2). No threshold findings are required of the agency before it may deny a petition, nor must the agency demonstrate that it considered any mandatory criteria before granting or denying a petition. Plaintiffs attempt to explain away this statutory silence by arguing that the substantive criteria governing petition denials are to be found in those sections of the TSCA under which the agency is requested to act. Thus, in a case such as this, where EPA is asked to initiate rulemaking proceedings under section 6 of the Act, the agency's denial of such a petition is judged according to the standards of that section. Plaintiffs offer no explanation for why Congress did not simply incorporate these standards into section 21 itself by simple reference to the relevant sections, other than to say that it would have been "redundant" to do so. A more serious flaw with plaintiffs' interpretation, however, is the fact that the sections plaintiffs rely on require that EPA make certain findings *before* it may act, not before it may refuse to act. Thus, for example, under section 6 the agency must determine that there is a reasonable basis to conclude that the manufacture, distribution or disposal of a certain substance presents or will present an unreasonable risk of injury to health or the environment before it can issue rules under section 6. The section does not, however, require the agency to make certain findings before it *declines* to take action, such as initiating rulemaking proceedings. The criteria plaintiffs purport to find in the relevant sections of the TSCA, therefore, can only be derived by negative inference—that is, by assuming that if EPA cannot issue a rule unless it finds that an unreasonable risk of injury exists, then it cannot refuse

to initiate rulemaking proceedings unless it finds the opposite: *i.e.*, that there is no reasonable basis to conclude that an unreasonable risk exists. Not only is such statutory construction flawed as a matter of logic, it would again shift the burden of proof from the petitioners to the agency. Moreover, it would force EPA to decide during the 90–day response period the question that normally would only be answered at the conclusion of all rulemaking proceedings—namely, whether there is a reasonable basis to conclude that an unreasonable risk of injury to health or the environment exists.[3]

■ Plaintiffs' other arguments in support of APA review are equally unavailing. They note that section 21 requires EPA to publish its reasons for denying a petition in the Federal Register, and contend that such a requirement is meaningless unless the published justification were subject to administrative review under the APA. The publication requirement, however, may well serve other purposes, such as demonstrating to the petitioners that their concerns have been adequately considered and addressed by the agency, and that suit under section 21 is therefore unnecessary. And even where the petitioners are dissatisfied with the response, it may help frame the issues for a section 21 suit. In any event, because section 21 authorizes *de novo* review, neither the petitioners nor the agency are bound by the published reasons for denial, thus no purpose would be served by examining the agency's response under the APA.

Plaintiffs next suggest that *de novo* proceedings are unnecessary where, as here, a petitioner's challenge turns largely on questions of law; if the agency were re-

3. Plaintiffs argue that their construction of the statute would not force EPA to make the "ultimate" finding within 90 days, but would simply require the agency to make a *"threshold* determination that there is not a sufficient likelihood of ultimately being able to make the conclusive finding to justify commencement of a section 6 rulemaking." Plaintiffs' Opposition at 26 (emphasis in original). Whether or not there is in fact any discernible difference between plaintiffs' proposed threshold determination, and a determination that there is a reasonable basis for concluding that an unreasonable risk exists, plaintiffs' proffered standard of "a sufficient likelihood of ultimately being able to make the conclusive finding" finds no support whatever in the text of either section 21 or section 6, further demonstrating that, despite plaintiffs' interpretive efforts, there are no substantive criteria set out in the statute governing decisions to deny.petitions.

quired to conform its action to the requirements of the APA and the TSCA, plaintiffs argue, the need for *de novo* review would be obviated. Even though plaintiffs' complaint does raise some questions of a purely legal nature, such as whether the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) precludes regulations under the TSCA of the dioxin isomers present in pesticide products, the ultimate issue in a section 21 action is a question of fact: whether there is a reasonable basis to conclude that an unreasonable risk of injury exits. Plaintiffs, of course, will be allowed to litigate the effect of FIFRA on the TSCA, but resolution of this and other legal questions will not dispose of the ultimate factual issue.

■ Plaintiffs also seem to believe that EPA's construction of the statute grants greater procedural rights and protections to manufacturers and other regulated industries than it does to citizen groups, since it denies APA review to petition denials but affords such review where a section 6 rule is challenged. This suggestion of bias is unfounded. Citizen groups may well be aggrieved by an action taken under section 6—such as where a regulation that the groups favor is repealed or amended—and in such a case may avail themselves of the rights afforded by the APA. On the other hand, while citizen groups have a right to *de novo* review if a petition is denied, regulated industries have no equivalent right to contest the granting of a petition. Thus, citizen groups enjoy both a right to *de novo* review where the agency refuses to act, and a right to APA review when it acts in a manner not to the group's liking. EPA's construction of the statute, therefore, does not strip petitioners of their procedural rights.

Finally, the legislative history plaintiffs rely on does not support their contention that petition denials are subject to audit under the APA. As plaintiffs note, the Conference Report states that section 21 "affords greater rights to a person petitioning for the issuance of a rule or order" than to persons seeking "the amendment or repeal of an existing rule or order."

Conference Report at 98, U.S.Code Cong. & Admin.News 1976, p. 4583. Petitioners seeking issuance of a rule are "entitled to a *de novo* proceeding" if their petition is denied, but where the agency "denies a petition to amend or repeal an action taken under section 4, 5(e), 6, or 8, the Conference substitute permits review of such denial only under the APA." *Id.* at 98–99, U.S.Code Cong. & Admin.News 1976, p. 4584. The Conference Report itself makes no mention of APA review of denials of section 21 petitions, and only refers to such review in connection with petitions seeking to repeal or amend orders. The "greater rights" that section 21 petitioners enjoy are those inherent in a right to *de novo* review itself. Review of agency action under the APA is of course highly deferential; courts may not substitute their judgment for that of the agency and may only set aside an administrative decision that is arbitrary, capricious or not in accordance with the law. *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). A right to APA review, therefore, is a limited one; those disappointed by agency action bear a heavy burden in attempting to overturn that action. In a *de novo* proceeding, by contrast, agency action enjoys no presumption of validity nor is the agency itself accorded any special deference. Plaintiffs are entitled to demonstrate that their judgment with respect to a certain matter is superior to that of the agency's and should be substituted for the agency's. Such a showing in the context of an APA action would entitle a party to no relief whatever; in a *de novo* proceeding, it would discharge the plaintiff's ultimate burden. It thus does no violence to Congress' intent to deny APA review of section 21 petition denials. Plaintiffs are entitled to *de novo* review, which is precisely the greater protection Congress intended to confer on such petitioners.

For all the foregoing reasons, therefore, the Court will grant defendants summary judgment on Counts II through XIII.

## IV

■ Count IX of the complaint alleges that EPA has failed to perform non-discre-

tionary duties required by the TSCA. EPA denied plaintiffs' request for regulations on the manner of disposal of contaminated wastes based on its determination, pursuant to section 9(b) of the TSCA, that the risks posed by such disposal could be reduced or eliminated under other regulatory authorities. Plaintiffs allege that, having made such a determination, EPA has a non-discretionary duty "to use such other authorities to protect against the risks to health and the environment posed by the disposal of [such] wastes." Complaint at ¶ 97. Plaintiffs have failed to identify these non-discretionary duties, and, in moving for summary judgment, failed to advance any arguments in support of this claim. On the face of it, an allegation that the agency has a mandatory duty to take unspecified actions under unspecified regulatory authorities is untenable. The agency argues that the TSCA does not impose any such non-discretionary duties. In view of plaintiffs' complete failure even to identify such duties, the court will grant defendants summary judgment on this count as well.

Finally, plaintiffs alleged in Count IX that EPA failed to discharge its mandatory duty to initiate rulemaking under sections 4 and 8. The agency has since issued rules under those sections and plaintiffs agree that their claim is now moot. *See* Plaintiffs' Opposition at 41.

### V

Accordingly, for all the foregoing reasons, it is this 27th day of March, 1987

ORDERED that defendant Environmental Protection Agency's (EPA's) motion to dismiss be and it hereby is denied; and it is

FURTHER ORDERED that plaintiffs' motion for partial summary judgment on Counts II through IX of the complaint be and it hereby is denied; and it is

FURTHER ORDERED that the cross-motions of defendant EPA and defendant-intervenor Chemical Manufacturers Association (CMA) for partial summary judgment on Counts II through IX be and they hereby are granted; and it is

FURTHER ORDERED that judgment be and it hereby is entered in favor of defendant EPA and defendant-intervenor CMA, and against plaintiffs Environmental Defense Fund and National Wildlife Federation on Counts II through IX of the complaint; and it is

FURTHER ORDERED that the parties are to advise the court on or before April 8, 1987, as to the amount of time needed for additional discovery in this cause and the reasons therefore.

SO ORDERED.