**UNITED STATES POSTAL SERVICE, Plaintiff–Appellant,**

v.

**David NOTESTINE, et al., Defendants–Appellees.**

**No. 88–2480.**

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1988.

---

Michael Jay Singer, Atty. Appellate Staff, Civ. Div., Mark B. Stern, Dept. of Justice, Washington, D.C., Sam Longoria, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellant.

Tom Aubrey, Houston, Tex., for defendants-appellees.

Before WISDOM, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The United States Postal Service, acting under express statutory authority, resorted to district court to obtain a preliminary injunction permitting it to retain the mail of named persons while it conducted an administrative proceeding to investigate charges that those persons had solicited money through the mail by means of false representation. The district court not only denied the injunction but issued a preliminary injunction forbidding the Service to

pursue the administrative proceeding. It further ordered that the charges of false representation be decided in the district court rather than administratively. Because the applicable statute grants the Postal Service exclusive authority to investigate mail fraud charges by conducting administrative proceedings, however, the district court erred both in issuing the preliminary injunction and in arrogating to itself the power to decide the substantive issues in the case.

### I.

The Postal Service began an administrative proceeding against David Notestine, Gail Martin–Notestine, Telecard Corporation, and PMI Holdings, Inc. under 39 U.S.C. § 3005[1] for soliciting money through the mail by means of false representation. The Service charged that the Notestines and their corporations had falsely advertised that they could provide persons with Mastercard and Visa credit cards without regard to credit history if the applicant paid only an initial fee. While the administrative proceeding was pending, the Service sought a preliminary injunction in federal district court pursuant to 39 U.S.C. § 3007.[2] The injunction would have permitted the Service to detain the Notestines' mail until the conclusion of the administrative proceeding.

The Notestines counter-attacked by asking the district court to enjoin the Service from conducting the administrative proceeding and to require it to litigate all of its claims against the Notestines in district court. They argued that the Service had improperly filed parallel administrative and judicial proceedings, and was therefore barred from pursuing the administrative action. Relying upon its purported concurrent jurisdiction, the district court issued a preliminary injunction prohibiting the Postal Service from pursuing the administrative proceeding. On the grounds that the administrative proceeding "is not of the kind that requires a uniformity of decision" and "does not require specialized agency knowledge," the court held that the Service, "having sought equity in the United States district court, ... must do equity here ... The Postal Service will be enjoined from pursuing the claims asserted in this action against the Notestines ... in any other forum including administrative agencies." In this way, the district court sought to protect the Notestines from "a multiplicity of litigation."

### II.

Sections 3005 and 3007 and their accompanying regulations, repeatedly upheld by the Supreme Court against a variety of constitutional challenges,[3] prescribe a comprehensive administrative framework by which the Postal Service may prosecute individuals suspected of using the mail to further fraudulent schemes. The regula-

---

**1.** 39 U.S.C. § 3005 provides, in pertinent part:

Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations ... the Postal Service may issue an order which—

(1) directs the postmaster ... to return such mail to the sender ...

(2) forbids the payment by a postmaster to the person ... of any money order or postal note ...

(3) requires the person ... to cease and desist from engaging in any such scheme....

**2.** 39 U.S.C. § 3007 provides, in pertinent part:

(a) In preparation for or during the pendency of proceedings under section 3005 ... of this title, the United States district court ... shall, upon application therefor by the Postal Service and upon a showing of probable cause to believe ... section [3005] is being violated, enter a temporary restraining order and preliminary injunction ... directing the detention of the defendant's incoming mail by the postmaster pending the conclusion of the statutory proceedings and any appeal therefrom.... An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings.

**3.** *Outpost Development Corp. v. United States,* 414 U.S. 1105, 94 S.Ct. 832, 38 L.Ed.2d 733 (1973), *aff'g* 369 F.Supp. 399 (C.D.Cal.1973); *see Lynch v. Blount,* 404 U.S. 1007, 92 S.Ct. 673, 30 L.Ed.2d 656 (1972), *aff'g* 330 F.Supp. 689 (S.D.N.Y.1971); *see also United States Postal Service v. Athena Products, Ltd.,* 654 F.2d 362 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982); *Friedlander v. United States Postal Service,* 658 F.Supp. 95 (D.D.C.1987).

tions provide: "When the General Counsel of the Postal Service ... believes that a person is using the mails in a manner requiring formal administrative action under 39 U.S.C. 3005, he shall prepare and file with the Recorder a complaint ..."[4]

The institution of the administrative action, however, does not interrupt the flow of mail to the person charged and the Postal Service has no authority to intercept mail on its own initiative while the proceeding is pending. If, therefore, the Postal Service seeks to "impound" mail addressed to the charged person "[i]n preparation for or during the pendency of a proceeding initiated under 39 U.S.C. 3005," the Postal Service must "obtain[ ] an appropriate order from a U.S. District Court, as provided in 39 U.S.C. 3007."[5] In *United States Postal Service v. Athena Products, Ltd.*,[6] this court added the requirement that "injunctions granted under section 3007 should not extend longer than necessary for a prompt administrative determination."[7] After an administrative hearing, exhaustion of administrative remedies, and issuance of a final administrative order, the final agency action is, of course, subject to judicial review.[8]

In *Public Clearing House v. Coyne*,[9] the Supreme Court upheld the Postal Service's power to conduct an administrative hearing without obtaining prior judicial sanction. Subsequent cases have held that courts may not interfere with the Postal Service's exercise of the power under 39 U.S.C. §§ 3005 and 3007 "unless it has exceeded its authority or is palpably wrong."[10]

The Notestines did not claim, and the district court did not hold, that the Postal Service had exceeded its authority or that its decision to investigate had been palpably wrong. Instead, the Notestines sought to enjoin the administrative proceedings on the grounds that the allegations in the judicial and the administrative proceedings were "identical" and that the Notestines had a "right to have the legality of their business practices determined in one hearing."

As a factual matter, the two proceedings against the Notestines were not identical; indeed, they served distinctly different purposes. Administrative proceedings under § 3005 are designed to investigate and adjudicate the merits of claims of improper use of the mail. After a § 3005 proceeding, if the hearing officer does not exonerate the charged party, the Postal Service may issue an order directing the postmaster to return to the individuals who sent them all mail and money orders sent to the charged party. In addition, the Service may order the charged party to cease and desist from using the mail to further his fraudulent scheme. In contrast, a district court injunction issued pursuant to § 3007 is designed to prevent injury to the public from the continuation of a possibly fraudulent scheme until the administrative process has been concluded. In such a proceeding, the district court does not determine the validity of a charge and the injunction can provide only for the temporary detention of the charged party's mail.

Once the limited purpose of a district court hearing pursuant to § 3007 has been understood, it becomes clear that Congress intended the Postal Service and not the district courts to conduct initial investigations of mail fraud under § 3005. A person aggrieved by the Service's action may seek judicial review, but only after the action has become "final,"[11] that is, after the litigant has exhausted his administrative remedies. If, during the pendency of an administrative investigation, the agency

---

4. 39 CFR § 952.5 (1987).

5. 39 CFR § 952.6 (1987).

6. 654 F.2d at 362.

7. *Id.* at 368

8. 5 U.S.C. § 704.

9. 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904).

10. *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service*, 371 F.Supp. 1373, 1375 (S.D.N.Y.1974); *see Unique Ideas, Inc. v. United States Postal Service*, 416 F.Supp. 1142, 1144 (S.D.N.Y.1976).

11. 5 U.S.C. § 704.

seeks temporary injunctive relief, election of that special equitable remedy does not foreclose continuation of the administrative proceeding. The statutory framework provided by 39 U.S.C. §§ 3005 and 3007 specifically allows the Postal Service to make this limited excursion to district court. Moreover, although in any proceeding to enforce a Postal Service order "the defendant shall be entitled as a defense or counterclaim to seek judicial review, if not already had ... of the order issued under section 3005," [12] no Postal Service order has yet been issued in this case.

■ Therefore, the Notestines do indeed have a right to litigate all of their defenses to the Postal Service's charges in a single proceeding: the administrative proceeding initiated by the Postal Service. Neither the Postal Service statute nor any principle of administrative law gives them the right to litigate the charges against them in a federal district court simply because the Postal Service has exercised its statutory authority to resort to that court for interim injunctive relief. The Notestines therefore did not state a claim for which relief could be granted, and the district court erred in enjoining the Postal Service. Those who seek equity must of course do equity, but equity does not authorize a district court to disregard Congress's statutory scheme.

## III.

■ The conclusion that the district court should not have enjoined the Postal Service's proceeding is further reinforced by the simple fact that the district court lacks the power to hear the Service's false-representation charges. The Notestines correctly note that 28 U.S.C. § 1339 gives district courts jurisdiction to hear "any civil action arising under an Act of Congress relating to the Postal Service," but this misses the point. Jurisdiction to hear claims relating to the Postal Service does not imply the power to substitute the district court's judgment for the administrative determinations of the agency.

The Administrative Procedure Act does not allow judicial usurpation of powers granted to an agency. It permits judicial review only of final agency actions.[13] The requirements that litigants exhaust administrative remedies and await final administrative action before resorting to the courts further many important legislative and administrative policies, such as the following:

(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.' [14]

Judicial intervention in the agency process without the exhaustion of administrative remedies denies the agency the opportunity to apply the expertise that Congress intended the agency to exercise and the chance to correct its own errors. The district court must not substitute itself for the tribunal that Congress has established to hear and determine charges of misuse of the mail in the first instance.[15]

---

12. 39 U.S.C. § 3012(d).

13. 5 U.S.C. § 704.

14. *Patsy v. Florida Int'l Univ.*, 634 F.2d 900, 903 (5th Cir.1981) (quoting *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969), *rev'd and remanded on oth-* er grounds sub nom. *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

15. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

"[J]udicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise." [16] Unlike the plaintiffs in *Abbott Laboratories v. Gardner*,[17] the Notestines do not challenge the validity of administrative regulations but simply contest whether their conduct violated the statute, a question committed by Congress for decision in the first instance to the Postal Service.

Primary jurisdiction for the decision of the issue is "placed within the special competence" of the Postal Service. As the Supreme Court observed with regard to another agency in *United States v. Western Pacific Railroad Co.*, "The doctrine of primary jurisdiction 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" [18] The statutory plan vests primary jurisdiction over charges of violating § 3005 in the Postal Service. Unlike *United States v. Exxon Corp.*,[19] this is not a case in which the agency has filed a suit to enforce its orders in the district court for it seeks only to prevent continuation of a possibly harmful and illegal practice while it determines the legality of the practice.[20]

■ That Congress did not expressly declare the Postal Service's jurisdiction exclusive is not controlling. As the Supreme Court has stated, when Congress has enacted a specific statutory scheme for obtaining review, "the doctrine of exhaustion of administrative remedies comes into play and requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness." [21]

Because the Postal Service has the statutory power to initiate and determine the charges against the Notestines, the district court has authority only to review its actions after they have become final. The judicial power is then to review, not to decide *ab initio*.

We therefore VACATE the injunction issued by the district court, REVERSE its holding that it has the power to preempt the Postal Service's administrative proceeding, and REMAND this case for determination of the issues presented in the Postal Service's petition for an injunction.

---

**16.** *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).

**17.** 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**18.** *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956), *quoted with approval in Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 301, 96 S.Ct. 1978, 1986, 48 L.Ed.2d 643 (1976).

**19.** 773 F.2d 1240 (Temp.Emer.Ct.App.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986).

**20.** *Cf. United States v. Elrod,* 627 F.2d 813 (7th Cir.1980).

**21.** *Whitney National Bank v. Bank of New Orleans,* 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965) quoted by this court and followed in *Coca–Cola Co. v. Federal Trade Commission,* 475 F.2d 299, 302 (5th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973). *See also Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.–D.C., Inc.,* 826 F.2d 320 (5th Cir.1987); *McClendon v. Jackson Television, Inc.,* 603 F.2d 1174 (5th Cir. 1979).