**ENVIRONMENTAL DEFENSE FUND,
et al., Appellants,**

v.

**William K. REILLY, Administrator,
Environmental Protection Agency,
et al., Appellees,**

**Chemical Manufacturers Association, et
al., Intervenors.**

**Nos. 88–5325, 88–5326.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 8, 1990.

Decided July 27, 1990.

Mark Van Putten, with whom Karen Florini was on the brief, for appellants.

David C. Shilton, Atty., Dept. of Justice, with whom Robert L. Klarquist and Fred R. Disheroon, Attys., Dept. of Justice, and Alan Carpien, Atty., E.P.A., were on the brief, for appellees.

Edward S. Warren, with whom Timothy S. Hardy, James R. Walpole, Andrew A. Giaccia, David F. Zoll and Matthew B. Van Hook were on the brief, for intervenors.

Before WALD, Chief Judge, RUTH BADER GINSBURG, Circuit Judge, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge:

Appellants, the Environmental Defense Fund and the National Wildlife Federation, jointly petitioned the Environmental Protection Agency (EPA)[1] to issue, pursuant to the Toxic Substances Control Act,[2] rules designed to protect human health and the environment from allegedly harmful dioxins and furans. EPA denied the petition in major part, whereupon appellants brought this suit in the District Court. Appellants contended that EPA's disposition of their request for rulemaking contravened the Administrative Procedure Act (APA).[3] Appellants also invoked Section 21 of the Toxic Substances Control Act, which authorizes citizen petitions seeking promulgation of rules and orders under designated provisions thereof, and affords an opportunity for de novo district-court review of denials

1. Appellees herein are EPA, its Administrator and three other EPA officers. We refer to them collectively as EPA. Intervenors are the Chemical Manufacturers Association, a participant in the District Court, and the American Paper Institute.

2. 15 U.S.C. §§ 2601–2629 (1988).

3. See 5 U.S.C. § 706 (1988).

of such petitions.[4] The District Court awarded summary judgment to EPA on appellants' APA challenge, and that ruling is the subject of these appeals. The court later entered a consent decree settling all of appellants' Section 21 claims. We hold that appellants, having elected to pursue the Section 21 remedy to the results achieved by the settlement, cannot now resort to the APA.

## I. BACKGROUND

### A. *The Toxic Substances Control Act*

Enactment of this legislation in 1976 launched a "comprehensive program"[5] to anticipate and forestall injury to health and the environment from activities involving toxic chemical substances.[6] Congress structured the Act to fill "conspicuous gaps" in the protection afforded by preexisting "fragmented and inadequate" statutes,[7] and committed administration of the Act to EPA.[8] A brief resume of the Act's highlights serves the purposes of these appeals.

The Act provides in Section 4 for substance testing,[9] and in Section 5 for notice of intent to manufacture new substances or existing substances for significant new uses.[10] Section 6 requires imposition of restrictions when the substance is hazardous,[11] and Section 7 authorizes judicial proceedings for injunctive and other relief when danger is imminent.[12] Section 8 calls for retention and reporting of information,[13] and Section 10 for research, monitoring and dissemination of data.[14]

Section 6 is one of the most important features of the Act. It specifies that if EPA

finds that there is a reasonable basis to conclude that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture ... presents or will present an unreasonable risk of injury to health or the environment, [the agency must] by rule apply one or more of [prescribed] requirements to such substance or mixture to the extent necessary to protect adequately against such risk using the least burdensome requirements.[15]

These requirements include limitations on manufacture, processing, distribution or use of such substances;[16] regulated methods of disposal of substances;[17] warnings and instructions;[18] notification of unreasonable risks of injury;[19] and preparation and retention of records pertaining to manufacture, processing, monitoring and testing.[20] EPA is also empowered to issue orders exacting individual compliance with the Act.[21]

Among a variety of mechanisms supplied for enforcement of the Act[22] are two en-

---

**4.** See 15 U.S.C. § 2620 (1988).

**5.** H.R.Rep. No. 1341, 94th Cong., 2d Sess. 7 (1976) U.S.Code Cong. & Admin.News 1976 p. 4491.

**6.** *Id.* at 1–7. See also 15 U.S.C. § 2601 (1988) (findings, policy and purpose of the Act).

**7.** H.R.Rep. No. 1341, *supra* note 5, at 6, 7.

**8.** 15 U.S.C. § 2602(1) (1988).

**9.** *Id.* § 2603.

**10.** *Id.* § 2604.

**11.** *Id.* § 2605.

**12.** *Id.* § 2606.

**13.** *Id.* § 2607.

**14.** *Id.* § 2609.

**15.** *Id.* § 2605(a).

**16.** *Id.* § 2605(a)(1), (2), (5).

**17.** *Id.* § 2605(a)(6).

**18.** *Id.* § 2605(a)(3).

**19.** *Id.* § 2605(a)(7).

**20.** *Id.* § 2605(a)(4).

**21.** E.g., *id.* § 2605(b).

**22.** For example, the Act provides for assessments of civil penalties for violations of rules or orders issued conformably to its terms, *id.* § 2615(a), and criminal penalties for violations found to be knowing or willful. *Id.* § 2615(b). Violations may be restrained, *id.* § 2616(a)(1)(A), (B), and substances produced through violations may be seized. *Id.* § 2616(b).

tailing citizen activity.[23] Citizen participation is broadly permitted to "ensure that bureaucratic lethargy does not prevent the appropriate administration of this vital authority."[24] One form of citizen participation is authorized by Section 21;[25] and is central to the parties' dispute. By virtue of that section, "[a]ny person may petition [EPA] to initiate a proceeding for the issuance, amendment, or repeal of a rule ... or an order" under designated provisions of the Act.[26] If EPA grants the petition, it must "promptly commence an appropriate proceeding."[27] If, however, a petition requesting issuance of a new rule is denied, or the agency fails to grant or deny the request within a designated period, the petitioner may obtain de novo review in a federal district court.[28] If the petitioner, once in court, meets a preponderance-of-the-evidence standard, the court must order EPA to take suitable action.[29] A saving clause in Section 21 specifies that "the[se] remedies ... shall be in addition to, and not in lieu of, other remedies provided by law."[30]

## B. The Procedural History

In 1984, appellants jointly petitioned EPA,[31] "solely under the authority of section 21,"[32] to promulgate rules under Sections 4, 6 and 8 to curtail releases of dioxins and furans into the environment.[33] The petition further requested imposition of Section 8 record-keeping and reporting requirements, ostensibly to enable monitoring of the results.[34] The petition also asked that, should EPA lack sufficient data to make the threshold finding required by Section 6,[35] a testing rule be issued under Section 4 to gather whatever additional information might be needed.[36]

EPA denied the petition to the extent that it sought substantive rulemaking under Section 6 "because [it did] not believe sufficient information existed to issue such rules."[37] The petition was also rejected insofar as EPA felt that appellants' con-

23. Citizens may bring civil actions to restrain violations of the Act, or to require EPA to perform nondiscretionary acts. *Id.* § 2619. Citizens may also petition EPA for issuance, amendment or repeal of rules and orders fashioned under specific provisions of the Act. *Id.* § 2620.

24. 122 Cong.Rec. 32,857 (1976) (statement of Sen. Tunney).

25. 15 U.S.C. § 2620 (1988).

26. 15 U.S.C. § 2620(a).

27. *Id.* § 2620(b)(3).

28. *Id.* § 2620(b)(4)(A).

29. *Id.* § 2620(b)(4)(B).

30. *Id.* § 2620(b)(5). We analyze § 21 more thoroughly in Part II *infra.*

31. Petition of the Environmental Defense Fund and the National Wildlife Federation for Rulemakings to Prevent and to Reduce Environmental Contamination by Dioxins and Dibenzofurans [hereinafter Petition], Appellees' Supplemental Appendix (S.App.) 9.

32. *Id.* at 1, S.App. 14.

33. The petition listed these supplications:
    (1) Set health-based standards stipulating concentration limits in *products* the synthesis of which results in contamination by the specified [dioxins and furans].
    (2) Require the safe handling of all wastes contaminated by the specified [dioxins and furans] to channel them away from air emissions and water discharges into controlled solid waste streams.
    (3) Ban land and ocean disposal and underground injection of wastes contaminated by the specified [dioxins and furans].
    (4) Limit stack emissions from incineration of all waste contaminated by the specified [dioxins and furans] and for other wastes which upon combustion may result in the formation of the specified [dioxins and furans].
    (5) Promulgate health-based effluent prohibitions for these chemicals; establish water quality criteria for the specified [dioxins and furans].
    (6) Take measures to control nonpoint source runoff of the specified [dioxins and furans].
    Petition, *supra note* 31, at 3, S.App. 16 (emphasis in original).

34. *Id.* at 11–12, S.App. 24–25.

35. See text *supra* at note 15.

36. Petition, *supra* note 31, at 93, S.App. 106.

37. Dioxin and Furan Pollution; Partial Grant of Environmental Defense Fund/National Wildlife Federation Citizens' Petition, 50 Fed.Reg. 4426, 4434 (1985).

cerns should be redressed under other federal statutes.[38] EPA explained that "it lack[ed] critical information to decide whether all of the isomers of concern present an unreasonable risk,"[39] but announced that it was "granting the petition by commencing administrative proceedings to determine whether findings sufficient to support initiation of a rulemaking proceeding under section 4 and/or 8 may be made,"[40] and pledged that it would "consider issuing section 6 rules when sufficient data are obtained."[41]

Thereupon, appellants sued in the District Court. In Count I of their complaint, they applied for Section 21 de novo review of EPA's refusal to proceed with substantive rulemaking under Section 6.[42] In Counts II through VIII, they sought judicial testing of EPA's decision by the standards established by the APA.[43] The court, deeming unavailable any APA review of denials of Section 21 petitions seeking issuance of new rules,[44] granted EPA's motion for summary judgment with respect to Counts II through VIII.[45] The court perceived "an inherent illogic to [appellants'] contention that a petition denial is simultaneously subject to both *de novo* and APA review,"[46] and opined that its ruling was "further underscored by section 21's complete lack of substantive standards governing the agency's consideration of such petitions."[47] By the court's assessment, neither the section's saving clause[48] nor any other of the sundry grounds advanced by appellants[49] sufficed as a basis for APA review of the action taken on appellants' petition.[50]

## C. *The Settlement Agreement*

Before the District Court addressed Count I, which sought Section 21 review, the parties agreed to a settlement of all substantive claims asserted in that count. This agreement was incorporated into an elaborate consent decree,[51] which the District Court "entered as [its own] Order."[52] The decree states that it was "entered for the exclusive purpose of compromising and settling Count I of the" amended complaint;[53] it recites that "the parties wish to settle the dispute" so described;[54] and it provides that "[t]his decree shall apply to and be binding upon the parties to this action, and upon the officers, successors, agents, employees and assigns of the parties."[55]

The consent decree directs EPA to investigate the need to promulgate rules and orders to redress appellants' concerns, and, within prescribed time limits, to either com-

---

38. *Id.* at 4436–4447.

39. *Id.* at 4434. See also *id.* at 4435.

40. *Id.* See also *id.* at 4435, 4448.

41. *Id.* at 4434. EPA has since issued final rules requiring testing of certain chemical substances under § 4 for dioxin-furan contamination and reporting under § 8. 40 C.F.R. pt. 766 (1989).

42. Amended Complaint, *EDF v. Thomas*, Civ. No. 85–973 (D.D.C.) (filed June 6, 1985) ¶¶ 44–60, S.App. 157–160.

43. *Id.* ¶¶ 61–98, S.App. 160–168.

44. *EDF v. Thomas*, 657 F.Supp. 302, 311 (D.D.C. 1987).

45. *Id.* at 308. We agree with the court that EPA's favorable response to the petition's § 4 request did not moot the controversy. See *id.* at 307–308.

46. *Id.* at 309.

47. *Id.*

48. *Id.*

49. *Id.* at 310–311.

50. *Id.* at 311. The court also entered summary judgment for EPA on the amended complaint's Count IX, see *id.* at 311–312, charging agency failure to perform unspecified nondiscretionary duties allegedly imposed by the Act. That disposition was not appealed.

51. Consent Decree, *EDF v. Thomas*, No. 85–0973 (D.D.C.) (filed July 27, 1988), Appendix to Brief for Appellants (A.App.) at 13 [hereinafter Consent Decree].

52. *EDF v. Thomas*, Civ. No. 85–0973 (order) (filed July 27, 1988), A.App. 12.

53. Consent Decree, *supra* note 51, ¶ 2, A.App. at 13.

54. *Id.* ¶ 2, A.App. 13–14.

55. *Id.* ¶ 6, A.App. 15.

mence appropriate proceedings or announce its refusal to do so.[56] The decree states that it is in "full satisfaction of all claims" embraced by Count I or assertible under Section 21 with respect to dioxin-furan regulation under the Act of activity which other agency-administered statutes empower EPA to deal with.[57] The decree provides that its entry also constitutes entry of final judgment on Counts II–IX,[58] and binds appellants to move for dismissal of Count I with prejudice when EPA completes the tasks required by the agreement.[59]

## D. The Parties' Contentions

Appellants maintain that the District Court erred in holding that APA review of administrative denials of Section 21 new-rule petitions is legally out of reach. They argue that "[n]othing in the language or legislative history of [the Act] explicitly indicates congressional intent to preclude APA review of citizens' petition denials." [60] They point particularly to the " 'strong presumption' " that agency decisions are subject to judicial review,[61] and to Section 21's saving clause as evidence of congressional intent to preserve APA review of petition denials.[62] Appellants also take issue with the District Court's holding that there are no standards by which Section 21 new-rule petitions can be judged, and consequently that decisions thereon are committed wholly to agency discretion.[63]

EPA, backed by the intervenors, responds with the argument that when "Congress provides a specific remedy ... that remedy is presumed to be exclusive." [64] The question, EPA says, is "not whether review is precluded but whether the statutory review procedure is exclusive." [65] EPA points out that APA review is unavailable where there is an adequate alternative remedy, and insists that Section 21 confers such a remedy.[66] EPA warns that appellants' broad reading of Section 21's saving clause "would render meaningless particular restrictions or requirements which Congress placed on the express remedies, such as the burden of proof requirement" of Section 21.[67] EPA contends additionally that there are no standards by which agency denials of Section 21 new-rule petitions may be evaluated,[68] and asserts that no live controversy remained after the parties joined in the consent decree settling Count I of the amended complaint.[69]

We affirm the District Court's judgment without venturing as far abroad as that court did. While undoubtedly the scope of APA review of an agency's denial of a petition for rulemaking is "extremely limited," [70] the cases before us do not necessitate a determination as to whether APA review of agency denials of Section 21 new-rule petitions is totally precluded. Our view much more simply is that Congress did not intend to permit a litigant challenging an administrative denial of such a petition to utilize simultaneously both Section 21 and the APA. Because appellants pursued their Section 21 remedy to ultimate settlement of their substantive claims, we hold that resort to the APA is now fore-

56. *Id.* ¶¶ 15–27, A.App. 16–28.

57. *Id.* ¶ 33, A.App. 30.

58. *Id.* ¶ 34, A.App. 30.

59. *Id.* ¶ 32, A.App. 30.

60. Brief for Appellants at 16.

61. *Id.* at 14 (quoting *NRDC v. SEC,* 196 U.S.App. D.C. 124, 136, 606 F.2d 1031, 1043 (1979)).

62. Brief for Appellants at 17–18.

63. *Id.* at 24–33.

64. Brief for Appellees at 17.

65. *Id.*

66. *Id.* at 17–21.

67. *Id.* at 24.

68. *Id.* at 27–33.

69. *Id.* at 13 n. 6; Brief For Intervenors at 3–6; see also Brief For Appellants at 11 n. 11.

70. *WWHT, Inc. v. FCC,* 211 U.S.App.D.C. 218, 228, 656 F.2d 807, 817 (1981) (emphasis and citation omitted). Accord, *Arkansas Power & Light Co. v. ICC,* 233 U.S.App.D.C. 189, 196, 725 F.2d 716, 723 (1984); *NRDC v. SEC, supra* note 61, 196 U.S.App.D.C. at 138–139, 606 F.2d at 1045–1046.

closed. We need not and do not decide whether APA review would have been available to appellants had they chosen that route exclusively.

## II. THE FRAMEWORK OF SECTION 21

When it comes to statutory interpretation, it is a "familiar canon ... that the starting point ... is the language of the statute itself," and "absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." [71]  If, however, the language leaves the meaning of the statute unclear, the court may enlist the aid of pertinent legislative history and other sources of legislative intent in an effort to resolve the ambiguity.[72]  These twin guidelines shape our approach to the problem whether appellants may utilize the APA as a basis for their attack on EPA's disposition of their petition.

Section 21(a) authorizes "[a]ny person" to petition EPA "to initiate a proceeding for the issuance, amendment, or repeal" of a "rule" under Sections 4,[73] 6 [74] or 8,[75] or an "order" under Sections 5(e) [76] or 6(b)(2) [77] of the Act.[78]  Procedures for treatment of such a petition are meticulously described. Following its presentation,[79] EPA may convene a public hearing, conduct an investigation or look elsewhere for assistance in determining whether the petition should be granted.[80]  Within 90 days after filing of the petition, EPA must either grant or deny it.[81]  If EPA grants the petition, it must "promptly commence an appropriate proceeding in accordance with" Sections 4, 5, 6 or 8 of the Act.[82]  If EPA denies the petition, it must publish its reasons in the Federal Register.[83]

Upon denial of a petition seeking initiation of a rule, or failure to act upon such a petition in a timely manner, the petitioner may institute suit in a federal district court for an order compelling compliance with the request.[84]  The petitioner must "be provided an opportunity to have such petition considered by the court in a de novo proceeding," [85] and the disposition appropriate is set forth in careful detail:

If the petitioner demonstrates to the satisfaction of the court by a preponderance of the evidence that—

(i) in the case of a petition to initiate a proceeding for the issuance of a rule under section [4] ... or an order under section [5(e) ] ...—

(I) information available to [EPA] is insufficient to permit a reasoned evaluation of the health and environmental effects of the chemical substance to be subject to such rule or order; and

(II) in the absence of such information, the substance may present an unreasonable risk to health or the environment, or the substance is or will be produced in substantial quantities and

**71.** *Consumer Prod. Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980). Accord, *United States v. Hohri,* 482 U.S. 64, 69, 107 S.Ct. 2246, 2250, 96 L.Ed.2d 51, 58 (1987); *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301–2302, 85 L.Ed.2d 692, 696–697 (1985); *United States v. McGoff,* 265 U.S.App.D.C. 312, 318, 831 F.2d 1071, 1077 (1987).

**72.** *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434, 448 n. 12 (1987); *NLRB v. United Food & Commercial Workers Union, Local 23,* 484 U.S. 112, 124, 108 S.Ct. 413, 421, 98 L.Ed.2d 429, 442 (1987); *South Carolina. Pub. Serv. Auth. v. FERC,* 271 U.S.App.D.C. 95, 98, 850 F.2d 788, 791 (1988).

**73.** 15 U.S.C. § 2603 (1988).

**74.** *Id.* § 2605.

**75.** *Id.* § 2607.

**76.** *Id.* § 2604(e).

**77.** *Id.* § 2605(b)(2).

**78.** *Id.* § 2620(a).

**79.** See *id.* § 2620(b)(1) (place of filing and content of petition).

**80.** *Id.* § 2620(b)(2).

**81.** *Id.* § 2620(b)(3).

**82.** *Id.*

**83.** *Id.*

**84.** *Id.* § 2620(b)(4)(A).

**85.** *Id.* § 2620(b)(4)(B).

it enters or may reasonably be anticipated to enter the environment in substantial quantities or there is or may be significant or substantial human exposure to it; or

(ii) in the case of a petition to initiate a proceeding for the issuance of a rule under section [6] or [8] ... or an order under section [6(b)(2) ], ... there is a reasonable basis to conclude that the issuance of such a rule or order is necessary to protect health or the environment against an unreasonable risk of injury to health or the environment.[86]

the court shall order [EPA] to initiate the action requested by the petitioner. If the court finds that the extent of the risk to health or the environment alleged by the petitioner is less than the extent of risks to health or the environment with respect to which [EPA] is taking action under this [Act] and there are insufficient resources available to [EPA] to take the action requested by the petitioner, the court may permit [EPA] to defer initiating the action requested by the petitioner until such time as the court prescribes.[87]

Section 21 thus is a comprehensive as well as an unusual remedy open to petitioners denied promulgation of new rules.

As we have seen, Section 21 permits a petitioner to ask EPA not only for inauguration of a new rule or order, but also for amendment or repeal of a rule or order already in place.[88] But action or inaction on petitions for amendment or repeal of a rule, unlike those for initiation of a rule, are not accorded the privilege of de novo judicial review. The statutory language strongly suggests that, and the legislative history makes it plain and explains why Section 21 is written that way. The Senate Report, speaking of a petition for issuance of a new rule, states the reason:

In a judicial review of [EPA's] denial of a citizen's petition or failure to act, there would be no record upon which the review could be based, and therefore a *de novo* procedure is essential to provide the opportunity to develop such a record.[89]

The Conference Reports further inform us that Section 21

provides for different judicial review of the [agency] denial of a petition, depending upon whether such petition seeks the issuance of a rule or order or the amendment or repeal of an existing rule or order.... [It] affords greater rights to a person petitioning for the issuance of a rule or order because in such a situation the [agency] will not previously have addressed the issue by rule or order.[90]

Less hospitable treatment of petitions to amend or repeal is warranted, then, since "the [agency] already will have addressed the general subject matter in an existing rule or order and [its] determination will have been subject to review under section 19 of th[e] Act." [91] This difference in treatment is significant; the Conference Reports make it known that

the conferees do not intend that [EPA] be subjected to constant petitions challenging rules or orders for which adequate judicial review is provided under section 19. Therefore, if [EPA] denies a petition to amend or repeal an action under section 4, 5(e), 6, or 8, [Section 21] permits review of such denial only under

---

**86.** The period following "environment" appears in the original. The reviser notes that the period probably should be a semicolon.

**87.** 15 U.S.C. § 2620(b)(4)(B) (1988).

**88.** See text *supra* at notes 73–78.

**89.** S.Rep. No. 698, 94th Cong., 2d Sess. 13 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 4491, 4502–4503 [hereinafter Senate Report]..

**90.** S.Rep. No. 94–1302, 94th Cong., 2d Sess. 98 (1976) [hereinafter Senate· Conference Report]; H.R.Conf.Rep. No. 1679, 94th Cong., 2d Sess. 98 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 4583 [hereinafter House Conference Report].

**91.** Senate Conference Report, *supra* note 90, at 98; House Conference Report, *supra* note 90, at 98.

the Administrative Procedure Act.[92]

Section 19, to which the Conference Committee referred, provides for direct review in a federal court of appeals of rules "promulgat[ed]" under designated provisions of the Act.[93] For purposes of the review, some specifications of the APA, including standard of review, are modified,[94] and as modified they govern the review process.[95] Section 19 contains a saving clause similar to the one incorporated into Section 21.[96] Section 19, of course, applies only when EPA has actually established a rule, and not where, as here, it has refused to formulate a new rule.[97]

Emerging from this analysis are two standards of the Act's scheme of judicial review of EPA action on petitions for rulemaking, and complete silence of the statutory text with respect to the third. Denials of petitions seeking initiation of new rules may be reviewed in district courts in Section 21 proceedings and the review may be de novo. Refusals to amend or repeal existing rules can be reviewed in courts of appeals in modified APA proceedings. But the Act does not expressly address the question of APA review of denials of new-

rule petitions, and the search for the answer must continue.

## III. Construction of Section 21

Appellants urge us to view their litigative effort through the lens of a potent presumption that EPA's disposition of their rulemaking petition is subject to APA review.[98] To be sure, the APA "creates a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate,"[99] but that does not authenticate the proposition appellants advance. The presumption to which they refer relates to a choice between judicial reviewability and judicial unreviewability, not to the procedure by which the review is to occur if at all. This the APA itself makes perfectly apparent.

The APA declares that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof."[100] This provision is qualified by the inapplicability of the APA to situations wherein "statutes preclude judicial review"[101] or "agency action is committed to agency discretion by law."[102] But for the

---

**92.** Senate Conference Report, *supra* note 90, at 99; House Conference Report, *supra* note 90, at 99.

**93.** 15 U.S.C. § 2618(a)(1)(A), (B) (1988).

**94.** *Id.* § 2618(c).

**95.** *Id.* § 2618(c)(1)(A), (B).

**96.** "The remedies as provided in this section shall be in addition to and not in lieu of any other remedies provided by law." *Id.* § 2618(e).

**97.** Independently of other legislation, the APA itself authorizes petitions for rulemaking. "Each agency," it proclaims, "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule," 5 U.S.C. § 553(e) (1982)—language closely similar to that found in § 21. Moreover, refusals to engage in requested rulemaking constitute final agency action normally though narrowly reviewable in accordance with the APA. *Arkansas Power & Light Co. v. ICC, supra* note 70, 233 U.S.App.D.C. at 196, 725 F.2d at 723; *WWHT, Inc. v. FCC, supra* note 70, 211 U.S.App.D.C. at 228, 656 F.2d at 817; *NRDC v. SEC, supra* note 61, 196 U.S.App.D.C. at 138–139, 606 F.2d at 1045–1046. Appellants' rulemaking petition did not cite the operationally duplicative APA provi-

sion; their petition stated that it was filed "solely under the authority of section 21." See note 32 *supra* and accompanying text. Nonetheless, we recognize it as additional authorization for the filing of the petition.

**98.** Brief for Appellants at 14.

**99.** *NRDC v. SEC, supra* note 61, 196 U.S.App. D.C. at 136, 606 F.2d at 1043. Accord, *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348–349, 104 S.Ct. 2450, 2455–2456, 81 L.Ed.2d 270, 277–278 (1984); *Southern Ry. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 454–463, 99 S.Ct. 2388, 2394–2398, 60 L.Ed.2d 1017, 1025–1032 (1979); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 687 (1967).

**100.** 5 U.S.C. § 702 (1988). See also *id.* § 704 ("[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review").

**101.** 5 U.S.C. § 701(a)(1) (1988).

**102.** 5 U.S.C. § 701(a)(2) (1988). The Supreme Court has made clear that this exception to APA

presence of Section 21, appellants might have qualified for APA review of EPA's denial of their rulemaking petition by invoking the presumption of reviewability—a matter on which we intimate no opinion. As it actually was, however, no need to presume reviewability ever arose, for Section 21 obviously conferred reviewability, albeit in the manner specified in that section. "The form of proceeding for judicial review," the APA states pertinently,

> is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.[103]

Indubitably, Section 21 has all the character of "the special statutory review provision" spoken of, and plainly it is "relevant to the subject matter" of this litigation.[104]

This brief examination suffices to demonstrate that the presumption of reviewability does not validate appellants' thesis that EPA's ruling on their rulemaking petition must withstand not only their Section 21 assault but also testing by the APA's criteria.[105] Appellants have not confined themselves to the APA remedy; rather, they have endeavored to utilize both the APA and the Section 21 remedies. Thus the question confronting us is not whether

APA review is available singly in lieu of Section 21 review, but whether appellants are entitled to both.

The language of the Toxic Substances Control Act does not itself yield a clear answer to this pivotal question. When, however, we scrutinize as a whole the statutory text, the legislative history, the structure of the Act and the respective roles of Section 21 and the APA, we are constrained to conclude that Congress did not intend to authorize simultaneous utilization of the two remedies.

In the first place, that technique would be out of tune with the announced objective and carefully defined operation of Section 21. That section was incorporated into the Act as a means of producing, through a de novo proceeding in a district court, a record enabling an informed decision on the validity of an agency denial of a petition for issuance of a new rule.[106] A statute is to be construed in light of the purpose the legislature sought to serve,[107] and Section 21's mission is antagonistic to use of the two remedies concomitantly. And since Congress fashioned the Section 21 remedy to elevate effective judicial review to a degree perhaps unattainable otherwise, it would be rash to assume that Congress expected—let alone authorized—a petitioner to expend governmental as well as personal resources in pursuit of the infirm remedy alongside the healthy one. Statu-

review "is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136, 150 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)) (footnote omitted). See also *Heckler v. Chaney,* 470 U.S. 821, 830–831, 105 S.Ct. 1649, 1655–1656, 84 L.Ed.2d 714, 722–724 (1985); *Padula v. Webster,* 261 U.S.App.D.C. 365, 368, 822 F.2d 97, 100 (1987).

103. 5 U.S.C. § 703 (1988).

104. Compare *Nader v. Volpe,* 151 U.S.App.D.C. 90, 98, 466 F.2d 261, 269 (1971). See also *Taylor v. Cohen,* 405 F.2d 277, 279–280 (4th Cir. 1968); *United States Postal Serv. v. Notestine,* 857 F.2d 989, 994 (5th Cir.1988); *General Fin. Corp. v. FTC,* 700 F.2d 366, 368 (7th Cir.1983); *Pacific Power & Light Co. v. Bonneville Power Admin.,* 795 F.2d 810, 814 (9th Cir.1986).

105. See 5 U.S.C. § 706 (1988).

106. See notes 89–92 *supra* and accompanying text.

107. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508, 516 (1979); *Hudson Distribs., Inc. v. Eli Lilly & Co.,* 377 U.S. 386, 395, 84 S.Ct. 1273, 1280, 12 L.Ed.2d 394, 400 (1964); *Commissioner v. Bilder,* 369 U.S. 499, 502, 82 S.Ct. 881, 883, 8 L.Ed.2d 65, 68 (1962); *Automotive Parts Rebuilders Ass'n v. EPA,* 231 U.S.App.D.C. 378, 395 n. 66, 720 F.2d 142, 159 n. 66 (1983); *National Petroleum Refiners Ass'n v. FTC,* 157 U.S.App.D.C. 83, 99, 482 F.2d 672, 689 (1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974); *United States v. Maryland ex rel. Myer,* 121 U.S.App.D.C. 258, 260, 349 F.2d 693, 695 (1965).

tory construction leading to an absurd result is to be avoided.[108]

Beyond that, the Section 21 and the APA remedies are incompatible in major respects, a circumstance inveighing against the theory that Congress sanctioned concurrent use of both. The plaintiff in a Section 21 proceeding is entitled to de novo consideration of his petition for issuance of a new rule,[109] but APA review, save in rare instances, must be conducted on the administrative record.[110] The Section 21 plaintiff must demonstrate, by a preponderance of the evidence, a risk affecting health or the environment;[111] on APA review, the agency's action must be evaluated on the record.[112] While the Section 21 court, proceeding de novo, is free to disregard EPA's reasoning and decision, APA review is restricted[113] and highly deferential.[114] If the Section 21 plaintiff carries his burden and the court makes any one of the statutorily-specified determinations,[115] the court itself directs the disposition to be made of the petition.[116] On the other hand should a district court on APA review find agency action defective, either substantively or procedurally, it ordinarily must remand to the agency for further proceedings.[117] It is difficult to believe that Congress intended to indulge a disappointed petitioner in side-by-side use of remedies so incongruent.

Contemporaneous resort to Section 21 and the APA, moreover, could rather easily produce wholly inconsistent rulings. For example, a Section 21 de novo proceeding, in which the plaintiff has the burden of showing a threat to health or environment, could lead to a decision coinciding with EPA's outcome, while APA review, involving examination of the agency's reasons as well as its result, could necessitate a remand. Indeed, it is not beyond the realm of possibility that a plaintiff seeking review under both Section 21 and the APA would engender a jurisdictional clash—district-court authority over the Section 21 claims, and court-of-appeals authority over the others.[118]

Even more disturbing to us is the terrible waste of time, energy, money and tranquility inherent in any mixture of Section 21 and APA remedies which does not gain an outright victory for the plaintiff on his plea for rulemaking. Put another way, a citizen petitioner for issuance of a new rule, no matter how doggedly and successfully he pursues APA claims of agency error, can never achieve his ultimate goal unless and until he persuades EPA or the reviewing

**108.** *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973, 983 (1982); *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748, 756–757 (1982); *Alabama Power Co. v. Costle,* 204 U.S.App.D.C. 51, 88 & n. 89, 636 F.2d 323, 360 & n. 89 (1979); *Melong v. Micronesian Claims Comm'n,* 186 U.S.App.D.C. 391, 395, 569 F.2d 630, 634 (1977).

**109.** See note 87 *supra* and accompanying text.

**110.** *Doraiswamy v. Secretary of Labor,* 180 U.S.App.D.C. 360, 367–370, 555 F.2d 832, 839–842 (1976) (collecting authorities).

**111.** See note 87 *supra* and accompanying text.

**112.** *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443, 462 (1983); *SEC v. Chenery Corp.,* 332 U.S. 194, 196–197, 67 S.Ct. 1575, 1577–1578, 91 L.Ed. 1995, 1999 (1947).

**113.** See 5 U.S.C. § 706 (1988).

**114.** See *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 844–845, 104 S.Ct. 2778, 2782–2783, 81 L.Ed.2d 694, 703–704 (1984); *Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* *supra* note 112, 463 U.S. at 43, 103 S.Ct. at 2866, 77 L.Ed.2d at 458.

**115.** See note 87 *supra* and accompanying text.

**116.** See note 87 *supra* and accompanying text.

**117.** *FPC v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 86–87, 97 L.Ed. 15, 20 (1952); *Salt River Project Agricultural Improvement & Power Dist. v. United States,* 246 U.S.App.D.C. 74, 81 n. 8, 762 F.2d 1053, 1060 n. 8 (1985) (remand necessary "when there is a significant chance that but for the errors the agency might have reached a different result").

**118.** The Act places § 21 review squarely in the lap of the district court. 15 U.S.C. § 2620(b)(4)(A) (1988). Jurisdiction to review a final rule promulgated under the Act lies exclusively in the court of appeals. 15 U.S.C. § 2618(a) (1988). See text *supra* at notes 93–95. The proper forum for APA review of a denial of a petition for a new rule or order, if that remedy is available, is far less clear.

court that health or environmental concerns warrant the rulemaking he seeks. If, for instance, after the Section 21 battle has been fought to a finish and the reviewing court's ruling is adverse to the plaintiff under that section, but favorable to him under the APA, all that has been accomplished is a remand to EPA for further proceedings consistent with the law. Those proceedings would extend to reconsideration of the agency's original decision to deny rulemaking, and the Section 21 battle would resume, this time before EPA. Even if that transpired in an error-free manner but the petitioning citizen again lost before EPA, he would have to do battle again in a new Section 21 proceeding in court. How much easier it would have been for all concerned if that plaintiff had discarded any thought of joining Section 21 and the APA as twin mechanisms for review, and had simply used his APA ammunition to expose the agency's errors as flaws in the chain of reasoning eventuating in rejection of the rulemaking request.

At this point, we think, the longstanding policy of the law to avoid duplicative litigative activity comes to the fore. Strands of this policy are readily discernible among the underpinnings of several specific legal rules designed to minimize expense and inconvenience to litigants and conserve the finite resources of the courts.[119] We has-

ten to emphasize that we do not rest our decision upon any of these rules as such. What we do is look to one of the concepts centrally underlying them for guidance in discharging our interpretive responsibilities.

Absent plain statutory language or convincing indication to the contrary, federal courts will not impute to Congress an intention to uproot wholesome precepts interwoven into the fabric of our jurisprudence.[120] In *Jones v. Alfred H. Mayer Co.*,[121] the Supreme Court refused to "assume that Congress intended to effect any change, either substantive or procedural"[122] in a 98–year–old "general statute[123] applicable only to racial discrimination in the rental and sale of property and enforceable only by private parties acting on their own initiative," by enactment of "a detailed housing law[124] applicable to a broad range of discriminatory practices and enforceable by a complete arsenal of federal authority."[125] In *Callanan v. United States*,[126] the Court, adverting to "[t]he distinctiveness between a substantive offense and a conspiracy to commit [as] a postulate of our law,"[127] readily "attribute[d] 'to Congress a tacit purpose—in the absence of any inconsistent expression—to maintain a long-established distinction between offenses essentially different; a distinction

**119.** As prominent examples, the doctrines of election of remedies, see *United States v. Oregon Lumber Co.*, 260 U.S. 290, 301, 43 S.Ct. 100, 103, 67 L.Ed. 261, 271 (1922), and law of the case, see *White v. Higgins*, 116 F.2d 312, 317 (1st Cir.1940); the rule proscribing splitting of an indivisible cause of action, see *Doleman v. Levine*, 295 U.S. 221, 226, 55 S.Ct. 741, 744, 79 L.Ed. 1402, 1407 (1935); *Ritchie v. Landau*, 475 F.2d 151, 156 (2d Cir.1973); and the judicial preference for initial review of administrative action in the courts of appeals, see *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 742–743, 105 S.Ct. 1598, 1605, 84 L.Ed.2d 643, 655–656 (1985); *Polcover v. Secretary of the Treasury*, 155 U.S.App.D.C. 338, 342, 477 F.2d 1223, 1227, *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

**120.** "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859, 866 (1986) (citing

*Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266–267, 99 S.Ct. 2753, 2759–2760, 61 L.Ed.2d 521, 531–32 (1979)).

**121.** 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

**122.** *Id.* at 416–417 n. 20, 88 S.Ct. at 2191 n. 20, 20 L.Ed.2d at 1194–1195 n. 20.

**123.** 42 U.S.C. § 1982 (1982).

**124.** Civil Rights Act of 1968, Pub.L. No. 90–284, tit. VIII, 82 Stat. 81 (codified at 42 U.S.C. §§ 3601 *et seq.* (1982)).

**125.** *Jones v. Alfred H. Mayer Co., supra* note 121, 392 U.S. at 417, 88 S.Ct. at 2191, 20 L.Ed.2d at 1194–1195.

**126.** 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

**127.** *Id.* at 593, 81 S.Ct. at 325, 5 L.Ed.2d at 317.

whose practical importance in the criminal law is not easily over-estimated.'"[128] Similarly, in *Cole v. Young*,[129] the Court, finding it "difficult to justify summary suspensions and unreviewable dismissals on loyalty grounds of employees who are not in 'sensitive' positions and who are thus not situated where they could bring about any discernible adverse effects on the Nation's security,"[130] would "not lightly assume that Congress intended to take away [their procedural] safeguards in the absence of some overriding necessity, such as exists in the case of employees handling defense secrets."[131] And in *St. Regis Paper Co. v. United States*,[132] the Court acknowledged "the duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result."[133] It would take considerably more than appellants have offered to persuade us that Congress, in formulating Section 21, contemplated an interpretation allowing duplicative litigation of their substantive claims via the APA.

Appellants, however, point to the saving clause embodied in Section 21, which states that "[t]he remedies under this section shall be in addition to, and not in lieu of, other remedies provided by law."[134] Taken literally, this provision might superficially appear to preserve the right to APA review for which appellants so vigorously contend. That result does not follow nearly so readily, for the Supreme Court has made clear that saving clauses are not to be read so naively. In *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*,[135] an organization of watermen sued governmental officials and entities for alleged violations of the Federal Water Pollution Control Act[136] and the Marine Protection, Research and Sanctuaries Act of 1972.[137] Each of those statutes has a saving clause as broad as Section 21's, yet the Court held that a Section 1983 suit for damages[138] could not be maintained.[139] "It is hard to believe," the Court said, "that Congress intended to preserve the [Section 1983] right of action when it created so many specific statutory remedies, including ... two citizen-suit provisions."[140] Turning to the saving clauses, the Court concluded that Congress did not intend to perpetuate that right of action for substantive violations of either of the two statutes:

> The legislative history makes clear Congress' intent to allow further enforcement of anti-pollution standards arising under *other* statutes or state common law. A suit for damages asserting a substantive violation of [either of the two acts] is far different, even if the *remedy* asserted is based on the separate right of action created in § 1983.[141]

Thus the Court looked beyond the literal meaning of the saving clauses to legislative history indicative of a contrary meaning. In the litigation before us, the saving clause in Section 21 is susceptible to more than one reading, and we have been equally sensitive to a responsibility to take due

**128.** *Id.* at 594, 81 S.Ct. at 325, 5 L.Ed.2d at 317–318 (quoting *United States v. Rabinowich*, 238 U.S. 78, 88, 35 S.Ct. 682, 685, 59 L.Ed. 1211, 1215 (1915)).

**129.** 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956).

**130.** *Id.* at 546, 76 S.Ct. at 868, 100 L.Ed. at 1404.

**131.** *Id.* at 546–547, 76 S.Ct. at 868, 100 L.Ed. at 1404.

**132.** 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

**133.** *Id.* at 218, 82 S.Ct. at 295, 7 L.Ed.2d at 248.

**134.** 15 U.S.C. § 2620(b)(5) (1988).

**135.** 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

**136.** 33 U.S.C. §§ 1251–1376 (1982 & Supp. V 1987).

**137.** 33 U.S.C. §§ 1401–1445 (1982 & Supp. V 1987).

**138.** See 42 U.S.C. § 1983 (1982).

**139.** *Middlesex County Sewage Auth. v. National Sea Clammers Ass'n, supra* note 135, 453 U.S. at 21, 101 S.Ct. at 2626, 69 L.Ed.2d at 450–451.

**140.** *Id.* at 20, 101 S.Ct. at 2626, 69 L.Ed.2d at 450–451.

**141.** *Id.* at 20 n. 31, 101 S.Ct. at 2626 n. 31, 69 L.Ed.2d at 451 n. 31 (emphasis in original).

account of other considerations pertinent to its proper interpretation.[142]

Appellants also refer us to Section 21's direction to EPA to publish in the Federal Register its reasons for denying a rulemaking petition.[143] We accept that requirement as an indication of congressional intent to aid judicial review in some measure. We realize that publication of reasons may serve other than as a starting point for such review,[144] but we regard additional purposes as too slight to discount appreciably the assistance those reasons might lend to reviewing courts. Appellants assert, however, that preclusion of APA review would render superfluous Section 21's call for publication since the agency's reasons are immaterial in a subsequent de novo review proceeding.[145] That argument is unconvincing because publication of reasons is demanded whenever EPA turns down a Section 21 petition, whether or not the denial is subject to de novo review.[146] Even more fundamentally, the statutory call for publication, whatever its importance in other debates might be, has no significance to the question at hand—whether appellants may resort to APA review in addition to Section 21 review of EPA denials of new-rule petitions.

### IV. CONCLUSION

While in different counts of their amended complaint appellants enlisted Section 21 and the APA as independent procedural vehicles, in each instance the end result they sought to achieve was initiation of a rulemaking proceeding for the purpose of considering adoption of a set of administrative actions which they proposed.[147] What, then, was before the District Court from the very beginning was an invocation of two separate remedies as means toward realization of a single objective. After they suffered an adverse ruling by the court on their APA approach, they chose to compromise and settle, in the course of their Section 21 effort, their substantive claims to relief. Now, having accomplished as much as they could by use of Section 21, appellants strive to better their lot by way of the APA. We discern nothing in the language, structure or legislative history of the Toxic Substances Control Act indicating that they should be indulged in so extraordinary an undertaking. We hold that appellants, having thus utilized Section 21, cannot now resort to any remedy that the APA might otherwise have afforded.

The judgment of the District Court is accordingly

*Affirmed.*

---

**142.** Section 21's saving clause is not a dead letter. For instance, as the District Court stated, "[p]etitioners would still have a right to APA review if and when the agency took some type of final action—if, for example, it issued a rule pursuant to section 6 or testing rule under section 4." *EDF v. Thomas, supra* note 44, 657 F.Supp. at 309.

**143.** See text *supra* at note 83.

**144.** The District Court observed that the requirement may "demonstrate[ ] to the petitioners that their concerns have been adequately considered and addressed," and that "it may help frame the issues for a Section 21 suit." *EDF v. Thomas, supra* note 44, 657 F.Supp. at 310.

**145.** Brief for Appellants at 20. As the District Court stated, "because section 21 authorizes *de novo* review, neither the petitioners nor the agency are bound by the published reasons for denial...." *EDF v. Thomas, supra* note 44, 657 F.Supp. at 310.

**146.** 15 U.S.C. § 2620(b)(3) (1988).

**147.** We thus differentiate a claim to relief—the entitlement to a specific result—from individual components of the claim, such as factual scenarios, grounds and reasons.